[Civ. No. 3403.    Second Appellate District, Division One.—February 7, 1921.]

## THE PEOPLE ex rel. JONES et al., Appellants, v. THE CARDIFF IRRIGATION DISTRICT, etc., Respondent.

[1] IRRIGATION DISTRICT—ENLARGEMENT OF BOUNDARIES — INCLUSION OF NONCONTIGUOUS LANDS—VOID PROCEEDING.—Under section 86 of the Irrigation District Act (Stats. 1897, p. 254), an order changing the boundaries of an irrigation district by the inclusion of additional territory is void where the district attempted to be annexed consists of not less than six large areas separated from each other by five natural features consisting of deep indentations of salt-water lagoons of the Pacific Ocean, since the act provides for the inclusion in such a district of only such lands as are contiguous and which taken together constitute one tract of land.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Reversed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, S. D. O'Neal, Charles H. Taylor and Haines & Haines for Appellants.

Charles C. Crouch, Claude L. Chambers and Henry J. Stevens for Respondent.

CONREY, P. J.—*Quo warranto.* By order of the board of supervisors of the county of San Diego, under date of March 20, 1916, respondent herein was organized as an irrigation district, in compliance with the provisions of the California Irrigation District Act and amendments thereto. (Stats. 1897, p. 254; Stats. 1915, p. 1367; Stats. 1917, p. 751. Also in Deering's Gen. Laws 1915, p. 701, and Consolidated Supplement of 1917–19, p. 1282.) As originally formed, the district contained about 1,000 acres of land. By subsequent proceedings the area thereof was reduced to 616.8 acres. Thereafter, on the fourteenth day of October, 1918, a petition was filed with the board of directors of the district praying for a change of boundaries of the district so as to include therein the lands described

in the petition, which additional lands contained 25,751 acres. This petition was signed by the owners of more than one-half of the territory which they sought to have included within the district. Thereafter, on the twenty-third day of December, 1918, the board of directors of the district passed its resolution No. 44, purporting to change the boundaries of the district by including therein said additional area, in accordance with the prayer of said petition. All of the proceedings, from the filing of the petition to and including the final order of inclusion, were in accordance with the form of such proceedings as set forth in section 85 et seq. of the California Irrigation District Act. This action is prosecuted for the purpose of obtaining a judgment that said petition for change of boundaries and inclusion of land and all of the proceedings had thereunder are null and void; that the defendant is unlawfully exercising the franchise of an irrigation district over the lands described in the petition, and that defendant be ousted and excluded from exercising any power or franchise as an irrigation district over said lands or any part thereof. Judgment was entered in favor of the defendant, and the plaintiffs appeal therefrom.

Appellants' first point, as stated by their counsel, is that the thing attempted to be accomplished by the inclusion proceedings is not, within the meaning and intent of the Irrigation District Act, the enlarging of an existing district, but is in all substantial respects the creation of a new district. In effect, the contention is that at the time of filing the annexation petition and during the pendency of the proceedings thereunder, notwithstanding that respondent had been organized as an irrigation district, it was not in reality an existing district and, therefore, was not a district which the law intended to vest with authority to increase its territory by such proceedings as those here challenged by appellants. The claim is that the irrigation enterprise on which the original organization was based had wholly failed; that the district did not own or possess any water supply for irrigation purposes; that the district had become a mere legal shell, without substance and fit only for dissolution, and that a district in that condition is not legally capable of saving its existence by bringing in other lands and thereby acquiring actual capacity to function as

an irrigation district by the development of new sources of water supply not contemplated in the original organization.

The proceedings which must be followed in the organization of an irrigation district are set forth in the first twelve sections of the Irrigation District Act. These proceedings are conducted by and under the supervision of the board of supervisors of the county in which the district is to be located. In the course of those proceedings the board of supervisors is empowered to receive and consider a report from the state engineer concerning the supply of water available for the use of the proposed district, and is authorized to make such changes as it may deem advisable in the boundaries proposed by the petition presented to it by the required number of property owners within the proposed district. When the board of supervisors, in the exercise of the authority vested in it by the statute, shall have made the necessary preliminary orders, it is required to give notice of an election, at which the electors within the boundaries of the proposed district shall by their votes determine whether or not the district shall be organized. It is only after such an election duly canvassed and a declaration of the result duly made by the board of supervisors that, if the necessary favorable vote has been obtained, the organization of the district becomes complete.

Sections 85 to 97 of the same act provide for changing the boundaries of an irrigating district and the inclusion of other lands therein. None of these proceedings are submitted to the board of supervisors of the county. Inclusion proceedings are initiated by petition filed with the board of directors of the district. The required notice of such filing and of the proposed hearing thereon is given and published by the secretary of the board of directors. All of the successive steps of the process are conducted by that board or under its supervision, and all orders made, including the final order of inclusion, are made by the board of directors. The election, which under certain contingencies is required to be held to determine whether the boundaries of the district shall be changed, is an election solely by the electors within the existing district. The argument for appellants rests in part upon these and other striking differences between the proceedings for the organization of a new district

and the proceedings for the inclusion of lands by annexation thereof to an existing district.

The lands constituting the territory of the Cardiff Irrigation District, as it existed prior to these inclusion proceedings, are located near the shore of the Pacific Ocean. The lands which are claimed to have been annexed lie south, east, and north of the old district and extend along the coast in such form that there is a distance of about eighteen miles between the southerly limits and the northerly limits thereof. Section 1 of the Irrigation District Act, in designating the necessary conditions on which the organization of an irrigation district may be proposed, provides for the presentation of such proposition by a required number of holders of ''lands susceptible of irrigation from a common source and by the same system of works (including pumping from subsurface or other waters).'' Section 2 requires that the petition ''shall set forth generally the boundaries of the proposed district, and also shall state generally the source or sources (which may be in the alternative) from which said lands are proposed to be irrigated, and shall pray that the territory embraced within the boundaries of the proposed district may be organized as an irrigation district under the provisions of this act.'' In the petition for the formation of the Cardiff Irrigation District it was stated ''that the source from which the said lands are proposed to be irrigated are from the storage of surface water and from water-bearing sands and underground streams and percolating waters of the Escondido Creek at a point situate two miles distant from the said irrigation district, or to be utilized by means of wells, reservoirs, pumping and distributing plants, and storage and distributing reservoirs to be acquired and installed by the said district, or water to be leased or purchased for delivery into storage and distributing systems of the said district from persons, companies, associations, or corporations furnishing water for irrigation to consumers.'' Prior to the time of the inclusion proceedings, respondent abandoned its plan for obtaining water from the Escondido Creek source. It had acquired a pumping plant and three wells on the Encinitas Creek, located about two miles away from the Cardiff village. This water was used for domestic and garden purposes in the village, but not for irrigating lands set to crops. In accordance

with the evidence of these facts the trial court determined, by finding XIII, ''that the said Cardiff Irrigation District before the inclusion of said annexed territory did not own or possess any water supply or any system of waterworks or any means or source of obtaining water for irrigation of its own area or any part of said area, save and except that said irrigation district possessed a pumping plant from which water was and is pumped from wells sufficient in quantity to supply water for domestic and garden use to a part but not all of the platted town lots of the unincorporated town of Cardiff, which was included within said irrigation district; that said Cardiff Irrigation District, before the inclusion of said annexed land, did not own or possess water or source of water supply for the irrigation of said lands described in said petition and sought to be annexed, or any part thereof; that the only sources of water supply that could be obtained for the irrigation of any part of said annexed territory are outside of and several miles distant from said original Cardiff Irrigation District, and that said Cardiff Irrigation District has not now, and never had or possessed any right or interest in the said sources of water supply.''

Appellants argue that the plain intent of the sections of the act which relate to inclusion is that the only legitimate purpose of a petition of land owners to have their land included in an irrigation district is that they may share in the water supply and works for the irrigation of land; that, therefore, it is only irrigation districts having adequate water supply and works to irrigate additional territory which have the capacity to entertain or the competency to grant any petition to enlarge their boundaries to include new territory; that an inclusion proceeding under the statute is contractual, and the subject of the contract is an admission to rights in an existing water system of the district; that since this district has no irrigation system there exists no subject matter of the contract and, therefore, no basis for the proceeding.

Pursuing their argument further appellants direct attention to the provisions of the statute which outline the procedure subsequent to filing of a petition for such inclusion of additional territory. And they contend that the effect of such procedure, if enforced, is such that nonpetitioning

owners of land within the territory sought to be brought into the district will be deprived of their property, or have burdens imposed thereon, without their consent and without due process of law. In support of this contention it is claimed that the procedure thus required and observed did not give to nonpetitioning owners any notice of the proposed inclusion of their lands; did not vest in the board of directors any jurisdiction to determine whether these lands would be benefited by being included in the district; did not provide for such nonpetitioning land owners any opportunity to vote upon the proposition; and, further, that the board of directors was disqualified, and particularly that Cullen, the president of the board, was disqualified, to act in the matter, because Cullen, as owner of some of the land sought to be included, was the chief promotor of the plan and was one of the signers of the petition. All of these claims are contested, although Cullen's relation to the matter is admitted to have been in fact as stated. Assuming, however, for the moment, that the statute does not provide for notice to nonpetitioning owners, or give them any opportunity to be heard upon their objections to the matter proposed, respondent relies upon the fact that the district is a public and municipal corporation, and upon those numerous decisions which hold that in the creation of such corporations, and in annexation of territory to such corporations, laws which omit to provide for notice and a hearing and judicial determination of the question of benefits do not infringe upon the right of the land owner to be protected against the taking of his property without due process of law; that it is only when the corporation, by some process of taxation or assessment, seeks to impose a lien upon land, or to collect such tax or assessment, that the property owner may insist upon the right to have the validity thereof subjected to judicial inquiry.

It is no longer open to doubt that the legal status of an irrigation district is that of a municipal corporation. Although its duties and powers are of narrower scope in the subjects of their action than in the case of a city, or other general municipal organization, nevertheless the affairs concerning which such district does act are those "of a public corporation to be invested with certain political duties which it is to exercise in behalf of the state." (*In re Madera Irr.*

*Dist.,* 92 Cal. 296, 323, [27 Am. St. Rep. 106, 14 L. R. A.
755, 28 Pac. 272, 278].) This being so, it has been held
that "so far as proceedings for the organization are con-
cerned, we think that a reasonably liberal rule of construc-
tion should be adopted to carry out the wise purposes of
the law." (*Central Irr. Dist.* v. *De Lappe,* 79 Cal. 351,
[21 Pac. 825].) For like reasons, the same rule of con-
struction should be applied to the provisions of the statute
which cover the changing of boundaries of a district and
the annexation of additional territory. The Irrigation Dis-
trict Act provides (sec. 85) : "The boundaries of any irriga-
tion district now organized or hereafter organized under the
provisions of this act, may be changed in the manner
herein prescribed." Nowhere is there any stated limitation
upon the exercise of the right thus given other than that there
must be an existing district to which the annexation or
inclusion may be made. Whether the purpose contemplated
in such inclusion proceeding looks toward an extension
of water service from the district water supply to the ad-
ditional territory, or whether the purpose be to provide
for the district sources of supply which otherwise it
could not have—under either of these conditions, or both
of them, if we are able to take the statute as it reads—the
power is equally given to extend the limits of the territory
within which such public corporation lives, moves, and has
its being. As for the manner in which these things are to be
done, the constitution of California provides that corpora-
tions for municipal purposes shall be organized under such
general laws as the legislature shall provide. We have be-
fore us the procedure which the legislature has prescribed.
So far as the constitutional objection herein presénted by ap-
pellants is concerned, the short and sufficient answer is given
in *People* v. *City of Ontario,* 148 Cal. 627, 632, [84 Pac.
205, 208] : "We do not understand that the requirement
as to due process of law give a property owner an absolute
right to notice and hearing before his property may be in-
cluded within the limits of a municipality." Without at-
tempting to offer an extensive review of the leading decisions
on the subject—a work which has been done thoroughly and
often by courts of the highest authority—we hold that the
proceedings in question here, so far as they have relation to

the constitutional rights relied upon by counsel for appellants, have not been conducted in violation of those rights.

Section 86 of the Irrigation District Act reads as follows: "The holder or holders of title, or evidence of title, representing one-half or more of any body of lands adjacent to the boundary of an irrigation district, *which are contiguous, and which, taken together, constitute one tract of land,* may file with the board of directors of said district a petition, in writing, praying that the boundaries of said district may be so changed as to include therein said lands. The petition shall describe the boundaries of said parcel or tract of land, and shall also describe the boundaries of the several parcels owned by the petitioners, if the petitioners be the owners, respectively, of distinct parcels, but such descriptions need not be more particular than they are required to be when such lands are entered by the county assessor in the assessment-book. Such petition must contain the assent of the petitioners to the inclusion within said district of the parcels or tracts of land described in the petition, and of which said petition alleges they are, respectively, the owners; and it must be acknowledged in the same manner that conveyances of land are required to be acknowledged."

[1] Appellants contend that the petition for inclusion of these lands as part of the Cardiff Irrigation District is void on its face for the reason that the description of the boundaries of the land proposed to be included, as set forth in the petition, clearly exhibits the fact that the lands to be included are not contiguous and do not, taken together, or at all, constitute one tract of land. If the fact be as thus claimed, it must result that the filing of the petition did not vest in the board of directors any jurisdiction over the proceeding, and that the order of inclusion, as well as the intervening steps in the proceeding, must be held to be void. In *People v. City of Monterey Park,* 40 Cal. App. 715, [181 Pac. 825], this court had under consideration certain proceedings for the annexation of land to the city of Alhambra, the proceedings being conducted under a statute providing for the annexation of inhabited territory. From the description contained in the annexation petition it appeared that several distinct portions of the territory were not inhabited. Therefore, it was held that the petition was on its face not

sufficient, and for that reason no valid annexation proceeding was pending. It was contended by appellants in that case that the defense based upon the validity of the annexation proceedings could not be maintained because such defense came by way of collateral attack, in a *quo warranto* case. But the court held, for reasons there stated more at length, that such claim of want of jurisdiction may be asserted in an action of this nature where the facts which make the proceedings void appear in the petition by which they were initiated.

It is contended by appellants that this area of 25,751 acres, sought to be annexed to the Cardiff Irrigation District, consists of not less than six large areas comprised in the description contained in the petition (and, for illustrative purposes, shown on the map received in evidence herein), separated from each other by five natural features consisting of deep indentations of salt-water lagoons of the Pacific Ocean. These areas, for convenience, are numbered consecutively from 1 to 6. Numbers 1 and 2 lie south of the old district, and the other divisions lie north and east thereof. Assuming, without deciding, that areas numbered 1 and 2 might reasonably be held to constitute one tract of land, and that the remaining areas taken together might constitute one other tract of land, it seems clear to us that numbers 1 and 2 are in all respects a different tract of land from the remaining portion of the territory sought to be included. This is so by reason of the fact that there is no connection whatever between parcels 2 and 3, which, on the contrary, are so separated from each other that we are unable to find any justification for the claim that they should be considered as one parcel or body of land. While the description, as written in the petition, is continuous, we find that the calls thereof leave parcel 2 and run around the southeasterly boundary of the old district about a third of a mile before they touch and begin to run around the boundaries of parcel 3. The connecting line thus written into the description bounds no part of the lands sought to be included. As to them it is purely a mathematical abstraction, unrelated to any material thing. Covering nearly the entire width of the district at that point, parcels 2 and 3 are separated by a lagoon, known as the San Elijo lagoon, which appears to be, roughly speaking, from a quar-

ter of a mile to three-quarters of a mile in width. Counsel for respondent point out that the nature of the land underlying this lagoon is such that it could not appropriately be made part of an irrigation district; that if it had been included in the district, justice would have required that it be immediately excluded therefrom by proceedings for that purpose, and argue that, therefore, the lagoon should not count as an element in determining the contiguity or noncontiguity of the lands north and south thereof. We must reply that the question here to be answered should not turn upon the narrowness or liberality of definition of the word "contiguous." The statute was carefully written so as to govern the use of that word by providing for the inclusion in the district of only such lands as "are contiguous and which taken together constitute one tract of land." And since these lands, as they lie, are separated by a great and conspicuous natural feature, to such a degree that it is admitted that the intervening territory could not appropriately have been brought within the district, we are constrained to hold that they are not "one tract of land" within the meaning of the statute. To the suggestion that this would be a very technical construction of the words used, the obvious reply is that the opposite construction might easily frustrate the purpose of the limitation expressed in the right of petition which the statute has granted. It was not intended that the more numerous owners of one parcel of land should have the power, on their own volition, to initiate a proceeding to bring in their less numerous neighbors in an entirely different parcel, jointly involving all of them together in an annexation petition. Our conclusion is that the board of directors did not acquire jurisdiction to proceed on the petition filed, and that the order of inclusion is void.

The judgment is reversed.

James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 7, 1921, and the following opinion then rendered thereon:

THE COURT.—In denying a hearing in this court after decision by the district court of appeal of the second appellate district, division one, we desire to say that our denial is based solely upon that portion of the opinion which deals with the point upon which the judgment of the superior court is reversed, and entirely without regard to the views of the district court of appeal as to other questions discussed, concerning which we are not to be understood as intimating an opinion.

The application for a hearing in this court is denied.

All the Justices concurred, except Sloane, J., who was absent.