[No. F056201. Fifth Dist. June 3, 2009.]

RANDELL JOHNSON, Plaintiff and Appellant, v.
ARVIN-EDISON WATER STORAGE DISTRICT, Defendant and
Respondent.

732

COUNSEL

Palay Law Firm, Daniel J. Palay and Jenna H. Strauss for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Nate J. Kowalski, Kevin R. Dale, Jennifer D. Cantrell; Young Wooldridge, Ernest A. Conant and Jerry W. Pearson for Defendant and Respondent.

Renne Sloan Holtzman Sakai, Emily Prescott and Danielle DuCaine for Association of California Water Agencies as Amicus Curiae on behalf of Defendant and Respondent.

Richard L. Hamilton for Education Legal Alliance of the California School Boards Association as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**LEVY, J.**—Appellant, Randell Johnson, filed a class action complaint against respondent, Arvin-Edison Water Storage District (District), alleging that he, and a putative class of current and former District employees, had not been paid overtime and provided with meal breaks in accordance with the California Labor Code and the Industrial Welfare Commission (IWC) wage orders. The District demurred to the complaint on the ground that, as a public entity, it is exempt from the subject wage and hour statutes. The trial court agreed with the District and sustained the demurrer.

Appellant argues that, contrary to the trial court's ruling, public employers are subject to the California wage and hour provisions at issue unless they are expressly made exempt. According to appellant, under statutory construction rules, it is evident that the Legislature intended that water storage districts provide their employees with overtime and meal periods as required by Labor Code[1] sections 510 and 512, and IWC wage order No. 17. Appellant further asserts that these Labor Code requirements will not infringe on the execution of the District's sovereign powers.

Additionally, appellant argues the District is required to immediately pay wages due upon an employee's termination or resignation under sections 201 and 202 and is subject to penalties for failure to do so under section 203. Although "other municipal corporation[s]" are exempt from these requirements under section 220, subdivision (b), appellant contends the District does not qualify as such.

As discussed below, unless Labor Code provisions are specifically made applicable to public employers, they only apply to employers in the private sector. Since sections 510 and 512 do not expressly apply to public entities, they are not applicable here. Further, applying sections 510 and 512 to the District would infringe on its sovereign power to regulate its workforce. Also, IWC wage order No. 17 is inapplicable to this case. Finally, the District is a "municipal corporation" and, therefore, is exempt from sections 201, 202, and 203. Accordingly, the trial court correctly sustained the District's demurrer and the judgment will be affirmed.

### BACKGROUND

The District was formed as a water storage district in 1942 under Water Code section 39000 et seq., and has been designated as a "public agency of the State of California." As a water storage district, it acts in the nature of

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

irrigation, reclamation, or drainage districts. (Wat. Code, § 39060.) Specifically, the District operates facilities for storage and distribution of water. (Wat. Code, § 43000.) As part of this operation, the District has the power to set tolls and charges for the use of water (Wat. Code, § 43006); issue bonds (Wat. Code, § 45100); buy and sell property (Wat. Code, §§ 43500, 43507); acquire property it deems necessary by condemnation (Wat. Code, § 43530); sue or be sued (Wat. Code, § 43700); and contract (Wat. Code, §§ 43005, 44000).

The District is governed by an elected board of directors (Wat. Code, §§ 40302, 40658) that is expressly charged with power and authority in the nature of "police and regulatory powers . . . necessary to the accomplishment of a purpose that is indispensable to the public interest" (Wat. Code, § 39059). This authority includes the power to hire employees, set employees' compensation, and prescribe employees' duties. (Wat. Code, §§ 40356, 43152, subd. (c).)

In compensating its employees, the District complies with the wage and hour laws set forth in the federal Fair Labor Standards Act of 1938 (FLSA). (29 U.S.C. § 201 et seq.) Appellant contends that the District is subject to the more stringent California Labor Code provisions and wage order, specifically section 510, requiring overtime be paid for any work performed in excess of eight hours in one work day, and section 512, requiring specific meal periods. Under the FLSA, employees are only entitled to overtime wages for work performed in excess of 40 hours in a work week and meal periods are not required.

The trial court concluded the District was exempt from these California wage and hour statutes and IWC wage order No. 17. Accordingly, the trial court sustained the District's demurrer to the complaint without leave to amend.

## DISCUSSION

At issue in this appeal is the construction of the relevant statutes and wage orders. The facts are not in dispute. Therefore, this court is faced with questions of law requiring independent review. (*County of Fresno v. Malaga County Water Dist.* (2002) 100 Cal.App.4th 937, 941 [123 Cal.Rptr.2d 239].)

In construing a statute, the court's fundamental task is to ascertain and effectuate the intent of the Legislature. (*County of Fresno v. Malaga County Water Dist., supra*, 100 Cal.App.4th at p. 941.) The statutory language itself is the most reliable indicator. Therefore, the first step is to scrutinize the statute's words, assigning them their usual and ordinary meanings, and construing them in context. (*Wells v. One2One Learning*

*Foundation* (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225].) However, if the language allows more than one reasonable construction, the court looks to such aids as the legislative history of the measure and maxims of statutory construction. (*Ibid.*)

1. *The District, as a public agency, is exempt from sections 510 and 512.*

 a. *The genesis of sections 510 and 512.*

The IWC, established by the Legislature in 1913, was the state agency authorized to formulate the regulations, or wage orders, that govern employment in California. (*Industrial Welfare Com. v. Superior Court* (1980) 27 Cal.3d 690, 700 [166 Cal.Rptr. 331, 613 P.2d 579].) In fulfilling its broad statutory mandate to regulate wages, hours, and working conditions of California employees, the IWC acted in a quasi-legislative capacity. (*Id.* at p. 702.) Although the IWC was defunded effective July 1, 2004, its wage orders remain in effect. (*Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 434, fn. 2 [41 Cal.Rptr.3d 482].)

Effective January 1, 1998, the IWC eliminated daily overtime from five of the then existing 15 wage orders. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 60 (1999–2000 Reg. Sess.) as amended July 1, 1999.)[2] These five wage orders covered the following industry or occupational groups: manufacturing; professional, clerical, mechanical and similar occupations; public housekeeping industry; mercantile industry; and transportation industry. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 60, *supra*, as amended July 1, 1999.) In response, the Legislature passed, and the Governor signed, Assembly Bill No. 60 (1999–2000 Reg. Sess.), the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. (*Bearden v. U.S. Borax, Inc., supra*, 138 Cal.App.4th at p. 434.) Among other things, this legislation restored the eight-hour workday in section 510 and mandated meal periods in section 512.

Section 510 provides that eight hours of labor constitutes a day's work. It then sets forth the various minimum overtime rates for work in excess of eight hours in one workday, 40 hours in one workweek, and 12 hours in one workday, and hours worked on the seventh day of work in a workweek. Section 512 sets forth requirements for meal periods for employees working

---

[2] The District's motion to take judicial notice of the legislative history of Assembly Bill No. 60 (1999–2000 Reg. Sess., enacted as Stats. 1999, ch. 134) is granted. However, this court will not take judicial notice of documents relating to Assembly Bill No. 124 (2007–2008 Reg. Sess.) and Assembly Bill No. 1666 (2007–2008 Reg. Sess.) on the ground that they are irrelevant to this appeal.

more than five hours per day. Neither section either expressly applies to, or exempts, public entities. The District's status as a public entity is undisputed on appeal.

b. *Public agencies are not subject to a general statute.*

Appellant argues that the District is subject to sections 510 and 512 because those sections do not exempt public entities. According to appellant, if the Legislature had intended to exempt public entities, it could easily have done so. Appellant notes that both sections contain certain exemptions. Section 510 exempts employees working pursuant to an alternative workweek schedule and section 512 exempts employees in the wholesale baking, motion picture, or broadcasting industry who are covered by valid collective bargaining agreements.

■ However, traditionally, "absent express words to the contrary, governmental agencies are not included within the general words of a statute." (*Wells v. One2One Learning Foundation, supra*, 39 Cal.4th at p. 1192.) The Legislature has acknowledged that this rule applies to the Labor Code. In the context of reviewing the legislative history of an amendment to provide whistleblower protection to public employees (§ 1102.5), the court in *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311 [25 Cal.Rptr.3d 320, 106 P.3d 976], quoted the Senate Committee on Industrial Relations as follows: " 'These provisions are silent as to their applicability to public employees. Generally, however, provisions of the Labor Code apply only to employees in the private sector unless they are specifically made applicable to public employees.' " (35 Cal.4th at p. 330.) Thus, appellant's position is contrary to an established rule that has been recognized by the Legislature, i.e., public entities are not subject to a general statute unless expressly included. The Legislature's iteration of this rule is an indication that the Legislature follows it.

c. *Maxims of statutory construction indicate the Legislature did not intend sections 510 and 512 to apply to public agencies.*

Further, appellant's interpretation of sections 510 and 512 violates two maxims of statutory construction. Sections 510 and 512 are contained in division 2, part 2, chapter 1 of the Labor Code, which encompasses sections 500 through 558. Section 555 provides that the sections in that chapter pertaining to maximum consecutive working days (§§ 550, 551, 552 & 554) "are applicable to cities which are cities and counties and to the officers and employees thereof," i.e., to specified public entities. Thus, the Legislature has expressly applied certain wage and hour provisions to public entities.

■ If this court were to hold that, because not expressly exempted, public entities are subject to sections 510 and 512, we would be implying a term

that has been used in one place, i.e., section 555, but excluded in another, i.e., sections 510 and 512. Such an interpretation would violate the maxim that "[w]hen the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' " (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576 [273 Cal.Rptr. 584, 797 P.2d 608].) The reference to public entities in section 555 indicates that, in the context of wage and hour provisions, the Legislature expressly refers to public entities when it intends them to be included.

■ Additionally, if the Legislature intended division 2, part 2, chapter 1 of the Labor Code to be generally applicable to public entities, section 555 is unnecessary. "When two statutes touch upon a common subject, they are to be construed in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' " (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) Construing sections 510 and 512 as applying to public entities violates this maxim of statutory construction by rendering section 555 surplusage.

Appellant points to two other sections contained within division 2, part 2, chapter 1 of the Labor Code to support his position. According to appellant, based on sections 515 and 512.5, it can be inferred that the Legislature intended sections 510 and 512 to apply to public entities.

Section 515 grants the IWC the power to establish exemptions from the overtime requirements for executive, administrative and professional employees. However, no reference is made to public employees. Thus, contrary to appellant's position, this section does not indicate a legislative intent to apply section 510 to public employers.

Section 512.5 provides that, "if the Industrial Welfare Commission adopts or amends an order that applies to an employee of a public agency who operates a commercial motor vehicle, it may exempt that employee from the application of the provisions of that order which relate to meal periods or rest periods . . . ." According to appellant, by providing the IWC with the power to exempt public agency employees, it is logical to infer that the Legislature intended section 512 and the IWC wage orders to automatically include public agency employees. However, neither the statute's language nor its legislative history supports appellant's interpretation.

Section 512.5 provides for a two-step process. The IWC must first adopt or amend an order that applies to one specific type of public agency employee, i.e., an employee who operates commercial motor vehicles. This section was enacted in anticipation of such an IWC action. (Assem. Bill No. 98

(2003–2004 Reg. Sess.) as amended Mar. 12, 2003.)[3] Further, in analyzing Assembly Bill No. 98, the Senate Committee on Labor and Industrial Relations recognized that, under existing law, public employers were exempt from the meal and rest period provisions. Thus, section 512.5 merely codifies a potential limited IWC wage order exception to the general public employer exemption. It does not indicate a legislative intent to automatically apply section 512 and IWC wage orders to public employers.

> d. *Sections 510 and 512 would infringe on the District's sovereign powers.*

■ Finally, appellant relies on the "sovereign powers" maxim of statutory construction. As noted above, a traditional rule of statutory construction is that, in the absence of express words to the contrary, governmental agencies are not included within the general words of a statute. (*Wells v. One2One Learning Foundation, supra*, 39 Cal.4th at p. 1192.) However, under the "sovereign powers" maxim, government agencies are excluded only if their inclusion would result in an infringement upon sovereign governmental powers. (*Ibid.*) " ' "Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language . . . ." ' " (*Regents of University of California v. Superior Court* (1976) 17 Cal.3d 533, 536 [131 Cal.Rptr. 228, 551 P.2d 844].) Nevertheless, "[w]hile the 'sovereign powers' principle can help resolve an unclear legislative intent, it cannot override positive indicia of a contrary legislative intent." (*Wells v. One2One Learning Foundation, supra*, 39 Cal.4th at p. 1193.)

As discussed above, the indicia of legislative intent lead to the conclusion that the District, as a public entity, is exempt from sections 510 and 512. In any event, the District is also exempt under the "sovereign powers" maxim. If the District were subjected to sections 510 and 512, its sovereign powers would be infringed upon.

■ A statute infringes upon a public entity's sovereign powers if the statute affects the entity's governmental purposes and functions. (*Regents of University of California v. Superior Court, supra*, 17 Cal.3d at p. 537.) Appellant argues that overtime and meal period provisions have nothing to do with the District's functions. However, the District can only perform its purposes and functions through its employees. As the Attorney General has opined, " '[i]t is manifest that the relationship between a public employer and

---

[3] Amicus curiae Association of California Water Agencies' motion to take judicial notice of Assembly Bill No. 98 (2003–2004 Reg. Sess.) is granted.

its employees affects the fundamental purposes and functions of the governmental body.' " (71 Ops.Cal.Atty.Gen. 39, 43 (1988).)

■ One of the statutory powers granted to the District to enable it to accomplish its purposes is the power to set employees' compensation. (Wat. Code, §§ 39059, 43152, subd. (c).) Sections 510 and 512 address matters of employee compensation. (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 643, 645 [79 Cal.Rptr.3d 383].) Accordingly, sections 510 and 512 would affect the District's power to accomplish its purposes and thus would infringe upon its sovereign powers. Therefore, the trial court correctly concluded that the District was exempt from the requirements of sections 510 and 512.

2. *Wage order No. 17 is inapplicable.*

As discussed above, the IWC formulated the regulations, or wage orders, that govern employment in California. Each wage order applies to a different classification of employee. For example, wage order No. 1 applies to the manufacturing industry, wage order No. 2 applies to the personal service industry, and wage order No. 4 applies to professional, technical, clerical, mechanical and similar occupations.

The IWC promulgated interim wage order—2000, effective March 1, 2000, to implement wage order amendments required by Assembly Bill No. 60 (1999–2000 Reg. Sess.). At a public meeting held January 9, 2001, the IWC voted to change the name of "Interim Wage Order—2000" to "Wage Order 17—Regulating Miscellaneous Employees."[4]

Wage order No. 17 applies to "[a]ny industry or occupation not previously covered by, and all employees not specifically exempted in, the Commission's wage orders in effect in 1997, or otherwise exempted by law . . . ." (Cal. Code Regs., tit. 8, § 11170.) Although the majority of the wage orders expressly exempt public employees, this wage order does not. Nevertheless, wage order No. 17 does not alter the public employee exemptions in the prior wage orders.

■ At the January 2001 hearing on wage order No. 17, one of the IWC commissioners explained that this wage order would apply to an industry that was "something altogether new that couldn't be identified as belonging in any other wage order." However, water districts have existed in California since before the IWC was created in 1913. (See, e.g., *Jenison v. Redfield* (1906) 149

---

[4] Amicus curiae Association of California Water Agencies' motion to take judicial notice of documents relating to wage order No. 17 and of the Division of Labor Standards Enforcement pamphlet entitled "WHICH IWC ORDER? Classifications" is granted.

Cal. 500 [87 P. 62].) Accordingly, the IWC must have been aware of this industry when wage order No. 17 was enacted, i.e., it was not "altogether new." In fact, in its January 2003 pamphlet entitled "WHICH IWC ORDER? Classifications," a guide for determining the classifications of businesses and occupations under the IWC orders, the Division of Labor Standards Enforcement stated that it had not "identified any occupations that meet the definition of 'miscellaneous employees' in Industrial Welfare Commission Order 17-2001."

Appellant contends that wage order No. 17 applies to the District's employees and thus, the District is liable for violating this wage order's overtime and meal period requirements. According to appellant, "the District and its employees are subject to the provisions of Wage Order No. 17 because they are part of an industry and occupation not covered in any other Wage Order."

However, the operative complaint does not allege that the District violated wage order No. 17. Moreover, aside from the bald assertion that this industry and occupation are not covered in any other wage order, appellant provides no argument or explanation to support his position. In light of the history of, and the IWC's comments regarding, wage order No. 17, this deficiency is not surprising. No basis for applying wage order No. 17 to the District appears to exist and appellant has not demonstrated otherwise.

3. *The District is exempt from the requirements of sections 201, 202 and 203 because it qualifies as a "municipal corporation"*

 Sections 201 and 202 require an employer to immediately pay wages to an employee upon that employee's termination, layoff or resignation. Section 203 imposes penalties against an employer who willfully fails to pay such wages in accordance with sections 201 and 202. However, under section 220, subdivision (b), these sections do not apply to "employees directly employed by any county, incorporated city, or town or other municipal corporation."

Appellant contends that sections 201, 202 and 203 apply to the District because the District is not exempt as an "other municipal corporation." According to appellant, in the context of the Labor Code, the term "municipal corporation" should be narrowly and strictly construed. However, case law is contrary to appellant's position.

 In *Division of Labor Law Enforcement v. El Camino Hosp. Dist.* (1970) 8 Cal.App.3d Supp. 30 [87 Cal.Rptr. 476], the court concluded that the Legislature did not intend the term "municipal corporation" to be used in

its strict or proper sense, i.e., to mean an incorporated city or town. Rather, in the context of section 220, "other municipal corporation" refers to "municipal corporations in the commonly accepted sense—namely, public corporations or quasi-municipal corporations." (8 Cal.App.3d at p. Supp. 35.) In other words, the term applies to a corporation exercising a governmental function. (*Ibid.*)

In contexts other than the Labor Code, it has long been established that irrigation districts and water districts are municipal corporations. (*Metropolitan W. Dist. v. Co. of Riverside* (1943) 21 Cal.2d 640 [134 P.2d 249]; *Nissen v. Cordua Irr. Dist.* (1928) 204 Cal. 542, 544 [269 P. 171].) "It is no longer open to doubt that the legal status of an irrigation district is that of a municipal corporation. Although its duties and powers are of narrower scope in the subjects of their action than in the case of a city, or other general municipal organization, nevertheless the affairs concerning which such district does act are those 'of a public corporation to be invested with certain political duties which it is to exercise in behalf of the state.' " (*People v. Cardiff Irr. Dist.* (1921) 51 Cal.App. 307, 312 [197 P. 384].) Although the specific functions of irrigation districts, water districts, and water storage districts may differ, there is no essential difference between them. Their principal function of supplying water is the same. (*Rock Creek etc. Dist. v. County of Calaveras* (1946) 29 Cal.2d 7, 12 [172 P.2d 863].)

As discussed above, water storage districts are governed by elected boards of directors that have regulatory and police powers to operate facilities for storage and distribution of water, "a purpose that is indispensable to the public interest." (Wat. Code, § 39059.) These powers include setting tolls and charges for the use of water, issuing bonds, and acquiring property through eminent domain. Additionally, as with other local agencies, water storage districts are subject to open meeting laws and their records are subject to public disclosure. (Wat. Code, §§ 40656, 40657.) Thus, water storage districts perform an essential governmental function for a public purpose, i.e., the development, preservation and conservation of water for the beneficial use of the district's inhabitants (cf. *City of Modesto v. Modesto Irrigation Dist.* (1973) 34 Cal.App.3d 504, 507 [110 Cal.Rptr. 111]), through an elected board of directors with regulatory powers. As such, water storage districts qualify as other municipal corporations under section 220, subdivision (b).[5] Accordingly, the trial court correctly concluded that the District is exempt from the requirements of sections 201, 202 and 203.

---

[5] Citing *Salyer Land Co. v. Tulare Water Dist.* (1973) 410 U.S. 719 [35 L.Ed.2d 659, 93 S.Ct. 1224], appellant contends that, because a water storage district's services are limited to acquisition, storage, and distribution of water for farming, a water storage district does not provide the services of a municipal corporation. However, the *Salyer* court did not consider this issue. Rather, the court held that the voter qualification statutes for water storage district elections do not violate the equal protection clause of the federal Constitution. (410 U.S. at

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Vartabedian, Acting P. J., and Cornell, J., concurred.

---

pp. 734–735.) Moreover, even though a water storage district's services are limited, the district nevertheless performs an essential government function.