[No. F056823. Fifth Dist. Nov. 9, 2009.]

CALIFORNIA GROUNDWATER ASSOCIATION, Plaintiff and Appellant,
v.
SEMITROPIC WATER STORAGE DISTRICT, Defendant and Respondent.

COUNSEL

Lanahan & Reilley, Scott L. Steever and Keith T. Uland for Plaintiff and Appellant.

Weinberg, Roger & Rosenfeld, Barry E. Hinkle, Patricia M. Gates and Roberta D. Perkins for Construction Industry Force Account Council as Amicus Curiae on behalf of Plaintiff and Appellant.

Law Offices of Young Wooldridge, Ernest Conant, Scott K. Kuney, Phillip Hall and Alan Doud for Defendant and Respondent.

Downey Brand, Kevin M. O'Brien, Maya R. Ferry and Steven P. Saxton for Association of California Water Agencies as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**VARTABEDIAN, Acting P. J.**—This is an appeal from judgment entered against plaintiff and appellant California Groundwater Association after the court sustained the demurrer of defendant and respondent Semitropic Water Storage District. Appellant contends the trial court erred in concluding that Water Code section 13750.5 does not apply to public entities such as respondent. For reasons that follow, we agree with appellant: If respondent "undertake[s] to dig, bore, or drill a water well, cathodic protection well, groundwater monitoring well, or geothermal heat exchange well, to deepen or reperforate" any such well, or "to abandon or destroy" any such well, "the person responsible for that construction, alteration, destruction, or abandonment [must] possess[] a C-57 Water Well Contractor's License." (Wat. Code, § 13750.5.)[1] Accordingly, we reverse the judgment.

### Facts and Procedural History

This appeal comes to us after the trial court sustained respondent's demurrer and appellant declined to amend its complaint. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' " (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

Appellant is a nonprofit corporation; its members are involved in various aspects of water well drilling, as well as installation and maintenance of related equipment for production of water from wells. Respondent is a water storage district formed pursuant to the California Water Storage District Law, Water Code section 39000 et seq. (See generally *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 733–734 [95 Cal.Rptr.3d 53].) Prior to 2007, respondent hired licensed contractors to drill its water wells through a competitive bidding process. Such contractors held the necessary C-57 well drilling license issued by the Contractors' State License

---

[1] The allegations of the present complaint involve water wells, and not the other forms of drilling and construction mentioned in Water Code section 13750.5.

Board pursuant to the Contractors' State License Law, Business and Professions Code section 7000 et seq. Beginning in 2007, respondent began using its employees to perform these well services; none of these employees held a C-57 license.

Appellant sued respondent for declaratory and injunctive relief. After the court denied appellant's application for a preliminary injunction, respondent filed its demurrer to the complaint. After hearing, the court determined as a matter of law that appellant did not and could not state a cause of action. Appellant did not request leave to amend its complaint. The court entered judgment of dismissal, and appellant filed a timely notice of appeal.

## Discussion[2]

### A. *Statutory Language.*

Division 7 of the Water Code is known as the Porter-Cologne Water Quality Control Act (hereafter the water quality act). (Wat. Code, § 13020.) The water quality act was adopted in 1969 to address conservation, control, and utilization of water resources in the state and to protect the quality of such water. (*Id.*, § 13000; see generally Stats. 1969, ch. 482, § 18, p. 1051.) The water quality act required any person drilling or performing a wide range of other activities in conjunction with, inter alia, water wells to file with California's Department of Water Resources a notice of intent to perform those activities. (Wat. Code, former § 13750, repealed by Stats. 1996, ch. 581, § 4, p. 3205.)[3] The water quality act also required every such person to file a report with the department within 30 days after the well-related activities. (Wat. Code, former § 13751.) These requirements were applicable to "every person" who performed the well-related activities. A "person" is defined to "include[] any city, county, district, the state, and the United States, to the extent authorized by federal law." (*Id.*, § 13050, subd. (c).) Respondent concedes it is a "person" required to file notices of intent to drill and completion reports under the water quality act.

---

[2] This court previously permitted the Construction Industry Force Account Council (in support of appellant) and the Association of California Water Agencies (in support of respondent) to file amicus curiae briefs, to which the parties have filed answer briefs. The amicus curiae briefs present many of the same arguments as have the parties, sometimes in expanded form or framed differently. Other arguments are beyond the scope of this case or are otherwise not pertinent. Although we have considered the amicus curiae briefs, we do not find it necessary specifically to discuss those briefs in this opinion.

[3] Although the notice requirement was repealed in 1996, a similar permitting requirement remains in effect through the Kern County well ordinance. (Kern County Mun. Code, § 14.08.120.)

 In 1986, the Legislature added Water Code section 13750.5 to the water quality act. (See Stats. 1986, ch. 1373, § 2.5, p. 4908.) Section 13750.5 provides that "no person" shall undertake the specified well-related activities "unless the person responsible for that construction, alteration, destruction, or abandonment possesses a C-57 Water Well Contractor's License."

On its face, then, and read in the context of the water quality act, Water Code section 13750.5 plainly requires respondent to engage in the specified well-related activities only when the individual responsible for the activities is a licensed water well contractor.

 C-57 licenses are issued by the Contractors' State License Board pursuant to the Contractors' State License Law, Business and Professions Code section 7000 et seq. (hereafter the licensing law).[4] The licensing law, in general, applies to contractors who engage in a wide variety of construction activities, as set forth in detail at section 7026 (defining "contractor"). Again speaking generally, the licensing law is intended to protect the public from incompetent and unreliable contractors. (*Rushing v. Powell* (1976) 61 Cal.App.3d 597, 604 [130 Cal.Rptr. 110].)

The licensing law contains a number of exceptions to the requirement that contracting work be performed only by licensed contractors. (See §§ 7040–7054.5.) The exceptions involved in the present appeal are set forth in sections 7040, 7044, and 7051, which are set forth in full in the accompanying footnote.[5] All three exceptions begin with the phrase, "This chapter does not apply . . . ."

---

[4] Further undesignated section references are to the Business and Professions Code.

[5] Section 7040 states:

"(a) This chapter does not apply to an authorized representative of the United States government, the State of California, or any incorporated town, city, county, irrigation district, reclamation district or other municipal or political corporation or subdivision of this state when the entity or its representative is acting within the scope of the entity's or representative's official capacity.

"(b) Nothing in this section authorizes the entity or [its] authorized representative thereof either to enter into or authorize a contract with an unlicensed contractor for work which is required by this chapter to be performed by a licensed contractor."

Section 7044 states:

"This chapter does not apply to any of the following:

"(a) An owner of property, building or improving structures thereon, or appurtenances thereto, who does the work himself or herself or through his or her own employees with wages as their sole compensation, provided none of the structures, with or without the appurtenances thereto, are intended or offered for sale.

"(b) An owner of property, building or improving structures thereon, or appurtenances thereto, who contracts for such a project with a subcontractor or subcontractors licensed pursuant to this chapter.

Respondent contends it is exempted from the licensing law by each of the three exceptions, and the parties devote much of their briefing to parsing the exemptions. We think, however, this exercise is misguided. Whether an exception is or is not applicable to respondent, that exemption would, at most, excuse respondent from the requirements of *"this chapter,"* that is, the licensing law. The requirement that well-related activity be conducted or supervised by a licensed well driller, set forth in Water Code section 13750.5, is not imposed by the licensing law; it is, instead, imposed by the Water Code. Water Code section 13750.5 contains no exceptions from its requirements, and it does not reference the exceptions set forth in the licensing law.

---

"However, this exemption shall apply to the construction of single-family residential structures only if four or fewer of these structures are intended or offered for sale in a calendar year. This limitation shall not apply if the owner of property contracts with a general contractor for the construction.

"(c) A homeowner improving his or her principal place of residence or appurtenances thereto, provided that all of the following conditions exist:

"(1) The work is performed prior to sale.

"(2) The homeowner has actually resided in the residence for the 12 months prior to completion of the work.

"(3) The homeowner has not availed himself or herself of the exemption in this subdivision on more than two structures more than once during any three-year period.

"In all actions brought under this chapter, proof of the sale or offering for sale of any such structure by the owner-builder within one year after completion of same constitutes a rebuttable presumption affecting the burden of proof that such structure was undertaken for purposes of sale. Except as otherwise provided in this section, proof of the sale or offering for sale of five or more structures by the owner-builder within one year after completion constitutes a conclusive presumption that the structures were undertaken for purposes of sale.

"In addition to all other remedies, any (1) licensed contractor, or association of contractors, (2) labor organization, (3) consumer affected by the violation, (4) district attorney, or (5) the Attorney General, shall be entitled to seek injunctive relief prohibiting any violation of this chapter by an owner-builder who is neither licensed nor exempted from licensure by this section or any other section according to the provisions specified in Section 7028.3 or Section 7028.4. The plaintiff in any such action shall not be required to prove irreparable injury and shall be entitled to attorneys' fees and all costs incurred in the prosecution of such action, provided the plaintiff is the prevailing party. The defendant in any such action, shall be entitled to attorneys' fees and all costs incurred in the defense against such action, provided the defendant is the prevailing party.

"The registrar pursuant to Section 7090 may take disciplinary action as provided in this chapter against any person whenever the grounds or cause for disciplinary action arose upon any project undertaken by him or her as a licensee licensed pursuant to this chapter.

"Any person, firm, or corporation which has violated Section 7028 by engaging in contracting work as an owner-builder without having a license or an exemption from licensure under this section or any other section shall not be entitled to become a licensee under this chapter for a period of one year following the violation."

Section 7051 states:

"This chapter does not apply to a licensed architect or a registered civil or professional engineer acting solely in his or her professional capacity or to a licensed structural pest control operator acting within the scope of his or her license or a licensee operating with the scope of the Geologist and Geophysicist Act."

Accordingly, we hold that the exceptions set forth in the licensing law, whatever might be their effect on respondent for work that is subject to the licensing law, do not provide an exception to the unequivocal mandate of the Water Code.

### B. *The* Communications Relay *Case.*

*Communications Relay Corp. v. County of Los Angeles* (2005) 130 Cal.App.4th 162 [30 Cal.Rptr.3d 1] involved a property owner who sought to force the county to issue a well drilling permit even though the work was not to be performed by a licensed well driller. The plaintiff contended the wells would be built on its own property and that it was, therefore, exempt from Water Code section 13750.5's licensing requirement pursuant to the exemption of section 7044. (130 Cal.App.4th at p. 165.) The court rejected this contention. (*Id.* at p. 169.)

The *Communications Relay Corp.* court noted that permitting "unlicensed (and presumably inexperienced or unqualified) property owners" to build wells would undermine the express legislative purpose in enacting the water quality act, namely, to protect the public health and welfare by preventing underground water from being contaminated due to improperly constructed or abandoned wells. (*Communications Relay Corp. v. County of Los Angeles, supra*, 130 Cal.App.4th at p. 169.) This, the court stated, was a different legislative purpose from the consumer protection rationale of the licensing law. It was this consumer protection rationale that supported the property owners' exemption of section 7044: "[P]roperty owners who perform the construction work themselves on their own property do not need this protection . . . ." (130 Cal.App.4th at p. 168.) The same rationale did not support application of the exemption to Water Code section 13750.5 because groundwater contamination can directly affect public health far beyond the boundaries of an individual's property.

■ The court also concluded various other rules of statutory construction supported its determination that Business and Professions Code section 7044 did not create an exemption from the requirements of Water Code section 13750.5. In particular, Water Code section 13750.5 was enacted far later than section 7044 and generally "the latest statutory expression prevails." (*Communications Relay Corp. v. County of Los Angeles, supra*, 130 Cal.App.4th at p. 169.) Further, "a specific statute (such as [Water Code] section 13750.5, which applies specifically to the construction of water wells) prevails over a general statute (such as section 7044[], which applies generally to all kinds of construction)." (*Ibid.*)

Respondent contends *Communications Relay Corp. v. County of Los Angeles, supra*, 130 Cal.App.4th 162, is not relevant to the present case.

Respondent argues: "*Relay* actually decided the narrow, unrelated question of the applicability of the landowner exemption under the License Law (Section 7044(a)) with regard to private landowners. Importantly, *Relay* did not decide the current issue of whether a water storage district owning property for public purposes is required to possess a License, when constructing wells in its official governmental capacity under independent statutory authority to implement its water storage district project."

The underlying premise of the *Communications Relay Corp.* decision, it seems to us, is applicable whether the well driller is a public or a private entity: as a physical reality, the public health consequences of groundwater contamination extend far beyond the property of the well owner regardless of what form of legal entity owns the well.

C. *Sovereign Powers.*

Respondent contends that requiring it to comply with Water Code section 13750.5 violates its sovereign powers as a water storage district, that another provision of the Water Code adopts by reference the licensing exceptions contained in the licensing law, and that requiring it to obtain a well driller's license creates absurd results. None of these contentions has merit, and we address each only briefly.

Requiring water storage districts, together with all other political and governmental entities specified as "persons" in Water Code section 13050, subdivision (c), to perform well-related activity only under the supervision of a licensed well driller does not infringe on respondent's "governmental rights and authorities." Respondent, citing cases such as *Nutter v. City of Santa Monica* (1946) 74 Cal.App.2d 292, 300–301 [168 P.2d 741], argues that "general" words of a law should not be construed to include governmental entities unless that construction is "clear and indisputable" in the text of the law. The primary problem with this contention is that the definition of "persons" does not constitute "general language" that might broadly sweep in governmental entities. (See *Johnson v. Arvin-Edison Water Storage Dist., supra,* 174 Cal.App.4th at p. 738.) Instead, Water Code section 13050, subdivision (c), is specific in applying the provisions of the water quality control act to governmental entities: " 'Person' includes any city, county, district, the state, and the United States, to the extent authorized by federal law." The legislative intent to apply the requirements of the water quality act to governmental entities could hardly be more clear and indisputable.[6]

---

[6] Nor, of course, does the general grant of powers to water storage districts to "acquire, improve, and operate the necessary works for the storage and distribution of water" (Wat. Code, § 43000) permit a water storage district to ignore specifically applicable restrictions on the manner in which it exercises those powers.

D. *Ad Hoc Exemptions.*

Respondent also contends the application of Water Code section 13750.5 in accordance with its plain terms will be inconvenient, time consuming, and unnecessary. It asserts that it already builds its wells "in strict accordance with detailed well standards and specifications" and that its projects are designed and overseen by licensed engineers. Respondent does not cite any authority, however, for the proposition that this court is authorized to grant exemptions from statutory licensing requirements on the basis that the party is doing good, careful work even without the applicable license. Similarly, respondent cites no authority for the proposition that this court can substitute its judgment for that of the Legislature and permit licensed engineers to supervise well drilling activities when the Legislature has specifically required that such supervision be provided by C-57 licensees.

Finally, respondent makes no serious attempt to distinguish the licensing requirement of Water Code section 13750.5 from the permit and reporting requirements that bracketed the licensing requirement in the water quality act at the time Water Code section 13750.5 was enacted. (See Wat. Code, former §§ 13750, 13751.) Respondent admits it complies with those requirements; it apparently does not find them an infringement on its governmental authority. Not only do we fail to see any statutory basis for distinguishing among the permit, licensing, and reporting requirements, but we fail to see how the licensing requirement is more onerous than the other two requirements.

E. *Water Code Section 13801.*

Respondent contends that Water Code section 13801, amended in the same legislative session that Water Code section 13750.5 was enacted, effectively incorporates into the water quality act the licensing exemptions contained in the licensing law. As amended in 1986, Water Code section 13801, subdivision (b), requires the State Water Resources Control Board, by a particular date, to adopt a "model water well . . . ordinance implementing the standards for water well construction, maintenance, and abandonment contained in Bulletin No. 74-81 of the department. If the model ordinance is not adopted by this date, the state board shall report to the Legislature as to the reasons for the delay. The state board shall circulate the model ordinances to all cities and counties." (See Stats. 1986, ch. 1152, § 4, p. 4134; Wat. Code, § 13801 was further amended in 1991, but that amendment did not affect subd. (b).)

One provision of Bulletin No. 74-81, according to a secondary source submitted by respondent to the trial court, states: "[Except as otherwise provided, the following standards shall apply:] Section 6. Well Drillers. [¶] The construction, alteration, or destruction of wells shall be performed by

contractors licensed in accordance with the provisions of [the licensing law] unless exempted by that act." Accordingly, respondent contends, the Legislature has incorporated the licensing law exemptions into the Water Code.

In rejecting this contention, we first note that the court rejected the same argument in *Communications Relay Corp. v. County of Los Angeles, supra,* 130 Cal.App.4th at page 169: "[W]hen the Legislature codified the standards for water well construction in 1986 [in Water Code section 13750.5], it did not include any exemption, and the [Department of Water Resources's] standard cannot operate to provide one."

Further, the Legislature did not adopt Bulletin No. 74-81 as state law. Instead, it directed the Department of Water Resources to provide a model ordinance for consideration by local authorities. While the model ordinance was directed by the Legislature to set forth minimum standards for well construction, the local authority was entitled to adopt an ordinance that "meets or exceeds" the Bulletin No. 74-81 standards. Thus, the bulletin standards were intended to provide a flexible baseline for local ordinances. Indeed, the record indicates the department has "supplemented" the requirements of Bulletin No. 74-81 with additional provisions in Bulletin No. 74-90, and the current administrative standard is a compilation of the two bulletins. If the administrative bulletin had been enacted as statutory law, the department would have lacked legislative authorization to amend the bulletin.

Finally, Bulletin No. 74-81 is a 90-page document filled with technical specifications for water wells, published five years prior to the enactment of Water Code sections 13750.5 and 13801. (See Water Well Standards: State of Cal. (Dec. 1981) Dept. of Water Resources <http://www.water.ca.gov//pubs/groundwater/water_well_standards_bulletin_74-81_/ca_well_standards_bulletin74-81_1981.pdf> [as of Nov. 9, 2009.] It would render meaningless the broad and unequivocal requirement of Water Code section 13750.5 if we were to assume, based on a single sentence from deep within the document, that the Legislature intended exemptions from that section without any statement concerning such exemptions in Water Code section 13750.5 itself.

F. *Inclusion of Government Entities Is Not an "Absurd Result."*

Respondent contends its inclusion in Water Code section 13750.5 would produce an absurd result, indicating that the Legislature could not have intended such a result. Respondent contends that it is not eligible for a well driller license under the licensing law because it is a government entity, and to require it to obtain such a license would be to require the impossible. Respondent, however, misreads Water Code section 13750.5. That section applies to any "person," including respondent, but the section is satisfied if

"the person responsible" for the activity is licensed. There is no statutory requirement that the person "undertaking" well-related activity and the licensed person "responsible" for that activity be the same individual or entity. Had the Legislature intended that the first "person" and the second "person" be identical, it could easily have required that "no person" undertake well-related activity unless "such person" is licensed. We conclude Water Code section 13750.5 would be satisfied if respondent's supervisor of construction were licensed, just as it would be if respondent hired a licensed contractor to perform the activity.

## Disposition

The judgment is reversed. Appellant is awarded costs on appeal.

Levy, J., and Kane, J., concurred.

On November 19, 2009, the opinion was modified to read as printed above.