Filed 3/9/18; pub. order 3/21/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| NORMA SERRANO,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>AEROTEK, INC.,<br><br>        Defendant and Respondent. | A149187<br><br>(San Mateo County<br>Super. Ct. No. CIV526280) |

Plaintiff Norma Serrano brought this lawsuit against her former employer, Aerotek, Inc., which placed her as a temporary employee with its client, Bay Bread, LLC. She raised four causes of action against Aerotek and Bay Bread based on their alleged failure to provide meal periods. On appeal, she challenges an order granting summary judgment to Aerotek, arguing the trial court erred by determining that Aerotek satisfied its own duty to provide meal periods and was not liable for any meal period violations by Bay Bread. We affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Aerotek is a staffing agency that places temporary employees with its clients. Bay Bread operates a food production facility in South San Francisco. In September 2010, Aerotek and Bay Bread entered a contract under which Aerotek provided temporary employees to work at Bay Bread. The contract stated that temporary employees would work "under [Bay Bread's] management and supervision at a facility or in an

1

environment controlled by [Bay Bread]" and that it was Bay Bread's "responsibility to control, manage and supervise the work" these employees were assigned to perform under the contract. The contract also contained a clause under which Bay Bread agreed to "comply with applicable federal, state, and local laws in connection with the services provided by [Aerotek] hereunder."

Aerotek's policies that applied to temporary employees on assignment with clients were set forth in an employee handbook. In relevant part, Aerotek's meal period policy required the following:

> After a work period of more than 5 hours, an hourly employee must be provided an uninterrupted 30-minute off-duty meal break. This meal period must begin no later than the end of the employee's 5th hour of work, and the employee is expected to take this meal break in full. If, however, an employee's workday is no more than 6 hours, the employee may elect to waive the off-duty meal period in advance by written agreement with the company.
>
> [¶] . . . [¶]
>
> An employee should be relieved from all duties during these 30-minute meal breaks, and the employee must accurately record the time of day he or she began and ended the meal period. A meal period during which the employee is relieved of all duties is not considered time worked and thus the employee will not be paid for the meal break.
>
> [¶] . . . [¶]
>
> If at any time an employee believes that someone is preventing him or her from taking, or interfering with the employee's ability to take an authorized . . . meal period, the employee immediately should report the matter to their Aerotek Representative. The employee will suffer no retaliation for reporting this matter.

Bay Bread set the schedules that Aerotek temporary employees worked and managed their shifts, including the taking of meal breaks. Bay Bread had its own meal period policy that applied to its employees but not Aerotek's temporary employees. David Razon, who was deposed as Bay Bread's "person most knowledgeable," testified that every Aerotek temporary employee who worked at Bay Bread received the Aerotek

2

employee handbook and went through an orientation. These orientations took place at Bay Bread and were conducted by both Aerotek and Bay Bread representatives. Aerotek representatives conducted training on Aerotek's employment policies, including its meal period policy.[1] Bay Bread representatives familiarized temporary employees with the Bay Bread facility and instructed them on Bay Bread's policies, including issues of "safety[,] security, [and] compliance."

Razon was not familiar with Aerotek's policy, which he considered not "relevant" because Bay Bread "ran [its] shifts in such a way that everyone got a break compliant with state law." According to Razon, two considerations informed when Aerotek temporary employees took their meal breaks: the need to "ensur[e] that everyone got an uninterrupted meal break by the time five hours of their shift elapsed" and "workflow," for example, "when things needed to come in and out of the oven. We can't go take a break and let the cookies burn."

During the time period at issue, Aerotek employed an on-site account manager, David Scott, who worked in an administrative building on Bay Bread's site, across the parking lot from the production facility where the temporary employees worked. Scott visited the production facility twice a day for "walk-throughs," which typically lasted 10 to 15 minutes. According to him, it would have been impossible to monitor whether and when Aerotek temporary employees took their meal breaks, and he was not responsible for this type of supervision. Scott did review the time records of Aerotek temporary employees for "missed clock-in and clock-outs," but he was not tasked with looking for meal period violations. He would then send the time records to Aerotek's field support group to be used in issuing paychecks, and that group did not have the responsibility to look for meal period issues either. In contrast, Razon indicated that it was "Bay Bread's expectation that . . . Scott would have been reviewing . . . Aerotek [temporary]

---

[1] At oral argument, Serrano's counsel inaccurately represented that Aerotek temporary employees were trained on Aerotek's meal break policy only before being assigned to work at Bay Bread.

employees' time records to ensure that those employees were taking . . . compliant meal breaks."

Aerotek hired Serrano to work as a temporary hourly employee at Bay Bread from September 10 to October 4, 2012, and from January 16 to April 30, 2013. Both times, she signed forms acknowledging she had received Aerotek's employee handbook and "underst[ood] that [she] should consult [her] supervisor or the Human Resources Department regarding any questions not answered in the handbook." Both times, she also signed forms waiving a meal period on any day she worked no more than six hours, and she never revoked those waivers.

Serrano worked in Bay Bread's production facility. Scott estimated that "as many as 200 Aerotek temporary employees" and "as many as 100 Bay Bread employees" worked at the facility during the periods she was employed there. Her time records show that on several days on which she worked more than six hours, she took her meal breaks more than five hours after beginning work or, in a couple instances, did not take a meal break at all.[2] Scott stated that Serrano approached him once to discuss a conflict she had with a Bay Bread employee, but she never questioned him "about the meal period policy or about when meal periods were available." Nor did she "ever share any concern with [him] about meal[] periods . . . [or] ever report that she was being prevented from taking compliant meal[] periods. Indeed, at no time before or during [her] employment did any Aerotek employee ever share any concern with [him] about meal periods at Bay Bread . . . [or] ever contend that they had been prevented from taking compliant meal[] periods."

In response to an interrogatory asking Serrano to specify the facts supporting her claim that Aerotek "in any way prevented [her] from taking lawful meal periods," she stated that she was "presently unaware of any actions Aerotek affirmatively took to

_____

[2] Serrano claims that "her time records from Aerotek confirmed that her meal periods were late or noncompliant 36 days out of 42 days." Our review of the records cited—which cover only the second period during which she worked at Bay Bread—reveals slightly fewer days on which a violation could have occurred, but the exact number does not affect our resolution of the issues on appeal.

'prevent' [her] from taking meal breaks within the first five hour[s] of work" but "believe[d] that Aerotek failed to ensure that . . . Bay Bread implemented appropriate meal break policies." In response to another interrogatory, she explained that her "coworkers informed her that she should take her meal breaks at the same time as others in her group."

Serrano filed this lawsuit as a putative class action in January 2014, and the operative complaint alleges causes of action against both Aerotek and Bay Bread for failure to provide meal periods under Labor Code sections 226.7 and 512, failure to pay wages upon termination under Labor Code sections 201 and 202, unfair competition under Business and Professions Code section 17200, and penalties under the Private Attorneys General Act (PAGA).[3] Aerotek filed a motion for summary judgment of all the claims, and the trial court granted the motion.[4] The court entered final judgment for Aerotek in June 2016.

## II.
### DISCUSSION

A.    *General Legal Standards.*

1.    Standard of review.

The standard for reviewing a grant of summary judgment is well-established. Summary judgment is appropriate if "there is no triable issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) To meet its initial burden in moving for summary judgment, a defendant must present evidence that either "conclusively negate[s] an element of the plaintiff's cause of action" or "show[s] that the plaintiff does not possess, and cannot

---

[3] The lawsuit originally included another named plaintiff who brought claims for rest period violations against Aerotek and another one of its clients, but those claims were eventually settled. All further statutory references are to the Labor Code unless otherwise noted.

[4] The trial court also granted Aerotek's motion for judgment on the pleadings, which Bay Bread joined, to dismiss Serrano's claim for waiting time penalties based on the alleged meal period violations. Although Serrano also appealed from that order, she does not raise claims related to it in her brief.

5

reasonably obtain," evidence necessary to establish at least one element of the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853-854.) Once the defendant satisfies its initial burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) When considering an appeal from a grant of summary judgment, we independently review the record, "liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

### 2. Meal period requirements.

As a nonexempt employee, Serrano was entitled to meal periods during the workday. "An employer shall not require an employee to work during a meal . . . period mandated pursuant to an . . . applicable . . . order of the Industrial Welfare Commission." (§ 226.7, subd. (b).) Under the applicable wage order, IWC wage order No. 7-2001 (Cal. Code Regs., tit. 8, § 11070 (Wage Order No. 7)), "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee." (Wage Order No. 7, subd. 11(A).) Specifically, a meal break must be provided "after no more than five hours in a work day," not just "at any point in scheduled shifts that exceed five hours." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1041 (*Brinker*).) If an employer violates these requirements, it must pay premium wages. (§ 226.7, subd. (c); Wage Order No. 7, subd. 11(E); *Brinker*, at p. 1018.)

*Brinker*, the leading decision on the scope of an employer's duty to provide meal periods, held that "an employer must relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." (*Brinker, supra*, 53 Cal.4th at p. 1034.) An employer satisfies its duty to provide meal periods "if it relieves its employees of all duty, relinquishes control over their activities and permits them a

6

reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." (*Id.* at p. 1040.) An employer is not required, however, "to police meal breaks and ensure no work thereafter is performed." (*Ibid.*) As a result, "[p]roof an employer had knowledge of employees working through meal periods will not alone subject the employer to liability for premium pay." (*Ibid.*)

> B.   *Undisputed Evidence Establishes that Aerotek Satisfied Its Obligation to Provide Meal Periods Under* Brinker.

Serrano contends that the trial court erred in its rulings on issues related to whether Aerotek satisfied its own duty to provide meal periods. We are not persuaded.

The trial court determined that Aerotek had fulfilled its initial burden in moving for summary judgment by showing that it provided Serrano with compliant meal periods, based on evidence that it "adopted a lawful meal period policy" she "repeatedly acknowledged" receiving and her admission that "she [was] unaware of any actions taken by Aerotek to prevent her from taking meal periods." The court also found that Serrano's allegation that Aerotek "failed to 'ensure' that its client, Bay Bread, implemented appropriate meal break policies" was undermined by the evidence that Aerotek required Bay Bread to comply with all applicable laws and "instructed [Serrano] to immediately report if she was being prevented from taking authorized meal periods" but received no such reports.

The trial court then determined that Serrano had failed to raise a triable issue of material fact as to whether Aerotek provided her with compliant meal periods. In doing so, the court rejected her argument that Aerotek's meal period policy was entitled to no weight because it was not incorporated into the contract and Razon had testified that, while he was generally aware Aerotek had a policy, he considered the terms of that policy to be irrelevant. Relying on *Brinker*, the court also disagreed that Aerotek should have investigated potential violations as revealed in the time records, noting that Aerotek did nothing to prevent Serrano from taking breaks and she never complained about not receiving them.

7

Consistent with her position below, Serrano argues that Aerotek's own meal period policy is "irrelevant" because Bay Bread was not aware of it and did not enforce it. She offers no authority to support her position that Aerotek had a duty to take affirmative steps to ensure that Bay Bread implemented the policy. In fact, this position is at odds with *Brinker,* which held that an employer is not required to "police" the taking of meal breaks and that mere knowledge they are not being taken does not establish liability. (*Brinker, supra*, 53 Cal.4th at p. 1040.) *Brinker* did also recognize that "[w]hat will suffice" to satisfy an employer's duty to provide meal periods "may vary from industry to industry" (*ibid.*), and we do not mean to suggest that a temporary staffing agency meets its duty and immunizes itself from liability by merely promulgating a compliant meal period policy without regard to a client's implementation of it. Here, however, the undisputed evidence shows that Aerotek *did* do more than that. The contract between the parties required Bay Bread to comply with applicable laws, Aerotek provided its meal period policy to temporary employees and trained them on it during orientation, and the policy required them to notify Aerotek if they believed they were being prevented from taking meal breaks. Serrano fails to convince us that anything more is required of staffing agencies when they provide temporary employees to other companies.

In a related claim, Serrano also argues that Aerotek's failure to review time records and investigate whether meal period violations were occurring was a breach of its own duty to provide meal periods, not a nonactionable failure "to police or ensure that meal periods are taken." We fail to understand the distinction Serrano attempts to draw. She provides no authority to suggest that Aerotek could not fulfill its duty to provide meal breaks without investigating whether those breaks were being taken, and we specifically reject her contention that "time records show[ing] late and missed meal periods creat[ed] a presumption of violations." Even if Aerotek had actual or constructive knowledge that she was not taking her meal breaks within five hours of starting work, *Brinker* makes clear that such knowledge does not establish liability

8

because an employer has no obligation to ensure that employees actually take provided breaks. (*Brinker, supra*, 53 Cal.4th at p. 1040.)

In short, Serrano's attempt to impose a heightened duty on Aerotek finds no support in *Brinker* or any other relevant authority. The trial court correctly determined that there was no triable issue of material fact as to whether Aerotek fulfilled its own duty to provide meal periods.

### C. *Serrano Fails to Demonstrate that Aerotek Is Vicariously Liable for Any Meal Period Violations Committed by Bay Bread.*

Serrano also claims that Aerotek is vicariously liable for Bay Bread's alleged meal period violations. We disagree.

Serrano claims that vicarious liability exists based on the nondelegable duty doctrine. The doctrine is an exception to the common law rule that "a person who hired an independent contractor generally was not liable to third parties for injuries caused by the contractor's negligence in performing the work." (*Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 725-726.) The doctrine "is a form of vicarious liability because it is not based on the personal fault of the [party] who hired the independent contractor. Rather, the party charged with a nondelegable duty is 'held liable for the negligence of his [or her] agent, whether his [or her] agent was an employee or an independent contractor.' " (*Id.* at p. 727, italics omitted.)

Although the nondelegable duty doctrine may enable the injured employee of an independent contractor to sue the party who hired the independent contractor (see, e.g., *Felmlee v. Falcon Cable TV* (1995) 36 Cal.App.4th 1032, 1034-1035), Serrano fails to explain how it applies here. There is no dispute that as her direct employer Aerotek had a duty to provide her with meal periods, and Aerotek does not claim that it delegated that duty to Bay Bread.

Even if Aerotek purported to have delegated its duty, however, Serrano offers no authority suggesting the doctrine allows her to hold Aerotek liable for any failure by Bay Bread to provide meal periods. If anything, case law is to the contrary. (See *Benton v. Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701, 728 [finding it

9

"conceivable that, under certain circumstances, a joint employer could satisfy its affirmative meal and rest obligations by delegating those duties to a coemployer"].)

Though Serrano argues in terms of the nondelegable duty doctrine, her contention that Aerotek is liable for Bay Bread's violations is essentially grounded on the idea that Aerotek and Bay Bread were her joint employers. In addressing this issue, we will assume without deciding that both companies were her employers.

Serrano's reliance on the concept of joint employers is revealed by the main decision she discusses, *Noe v. Superior Court* (2015) 237 Cal.App.4th 316 (*Noe*). In that case, the Second District Court of Appeal held that section 226.8, which makes it "unlawful for any person or employer to engage in . . . [w]illful misclassification of an individual as an independent contractor" (§ 226.8, subd. (a)(1)), "is not limited to employers who make the misclassification decision, but also extends to any employer who is aware that a coemployer has willfully misclassified their joint employees and fails to remedy the misclassification." (*Noe*, at pp. 319-320.) Thus, two companies who had contracted with a third company to provide labor services could be liable for the third company's purported misclassification of the plaintiff as an independent contractor. (*Id.* at p. 319.)

In reaching its holding, *Noe* rejected the plaintiff's argument that the two companies that had failed to make the classification decision could be held liable even if they had no knowledge of the misclassification. (*Noe, supra*, 237 Cal.App.4th at pp. 331-332.) The court determined that there was "no authority for the proposition that a joint employer may be held liable for Labor Code violations committed by a cojoint employer based on principles of agency or joint and several liability. Rather, whether an employer is liable under the Labor Code depends on the duties imposed under the particular statute at issue." (*Id.* at pp. 333-334.) In a footnote following this statement, the court indicated that "many sections of the Labor Code do impose employer liability 'by virtue of employer status.' For example, section 512 requires every employer to provide its employees meal periods; section 226.7 provides employees a remedy against employers who fail to comply with this obligation. [Citations.] Because sections 512 and 226.7

10

impose a duty on every employer to provide meal periods, an employee with multiple employers who is denied a meal period may pursue a section 226.7 claim against any of his or her employers." (*Id.* at p. 334, fn. 10.) The court contrasted these statutes with section 226.8, which requires a showing not only that the plaintiff was misclassified "but also that the particular employer who is being sued actually engaged in the act of voluntarily and knowingly misclassifying the claimant." (*Noe*, at p. 334, fn. 10.)

The trial court here rejected Serrano's reliance on *Noe*, determining both that the statements about section 226.7 in footnote 10 were dicta and that, "to the extent the Court of Appeal's dicta suggests that a joint employer is liable for meal break violations committed solely by a co-joint employer, the dicta is not persuasive as it is contrary to the holding of *Brinker*." We agree with the trial court's assessment on both points. First, footnote 10's discussion of section 226.7 is undoubtedly dictum. " 'Dictum is the "statement of a principle not necessary to the decision." ' " (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 287.) *Noe*'s holding that an employer could not be liable for a co-employer's misclassification under section 226.8 if it was unaware of the misclassification did not depend on any determination about the scope of liability under section 226.7. Serrano does not seriously argue otherwise, making only the conclusory assertion that "*Noe* clearly imposes liability on Aerotek for Bay Bread's meal period violation[s]." We conclude that *Noe* is not authority for the proposition that an employer that has fulfilled its own duty to provide meal periods is nevertheless liable for any meal period violation by a co-employer. (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 620.)

Second, even if footnote 10's discussion of section 226.7 had precedential value, it is inconsistent with *Brinker*. *Brinker* does not impose liability on an employer that makes compliant meal periods available even if the employer is aware that its employees are not taking the breaks. It is true that the duty to provide meal periods arises by virtue of an entity's status as an employer of a person for at least five hours. (*Brinker, supra*, 53 Cal.4th at p. 1034; *Noe, supra*, 237 Cal.App.4th at p. 334, fn. 10.) But *Noe* made clear that whether an employer is liable for a co-employer's violations depends on the scope of

11

the employer's own duty under the relevant statutes, not "principles of agency or joint and several liability." (*Noe*, at pp. 333-334.) Here, Serrano points to nothing in the language of the applicable wage order or statutes to support the conclusion that an employer is liable not only for a breach of its own duty but also for a co-employer's breach of the co-employer's own duty. To the extent *Noe*'s statement that "an employee with multiple employers who is denied a meal period may pursue a section 226.7 claim against any of his or her employers" suggests that an employer is automatically liable for its co-employers' breach of their own duty to provide meal periods, we decline to rely on it. (*Id.* at p. 334, fn. 10.)

Serrano also argues that even if *Noe* does not establish that "multiple employers can be liable for meal period violations [solely] by virtue of their employer status," at the very least the decision's " 'actual engagement' test" applies here and establishes Aerotek's liability because Aerotek "knew or should have known about the pattern of meal period violations . . . and did nothing to investigate, correct or address the problem with Bay Bread." (Italics omitted.) *Noe*'s holding that a joint employer could be held liable for misclassification decisions it knew about and failed to address was based on section 226.8's language, however, not any principle generally applicable to all Labor Code provisions. As the court stated, "whether an employer is liable under the Labor Code depends on the duties imposed under the particular statute at issue." (*Noe, supra*, 237 Cal.App.4th at p. 334.) Again, Serrano identifies nothing in the language of the pertinent wage order or statutes to support her position.

       D.    *Serrano's Derivative Claims Were Properly Dismissed*.

In its ruling, the trial court implicitly agreed with Aerotek that because "the undisputed evidence establishe[d] it provided [Serrano] with compliant meal periods," her "meal period claim and derivative claims for waiting time penalties, unfair business practices, and PAGA penalties fail[ed] as a matter of law." On appeal, Serrano accepts that the derivative claims "rise or fall based on the meal period claim," and we therefore also affirm the dismissal of the derivative claims.

12

## III.
### DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.


_____

Humes, P.J.


We concur:


_____

Margulies, J.


_____

Banke, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| NORMA SERRANO,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>AEROTEK, INC.,<br><br>    Defendant and Respondent. | A149187<br><br>(San Mateo County<br>Super. Ct. No. CIV526280)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION<br>    [NO CHANGE IN JUDGMENT] |

THE COURT

The opinion in the above-entitled matter filed on March 9, 2018, was not certified for publication in the Official Reports. After the court's review of a request under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published in the Official Reports.

Dated: 3/21/18

_____
Humes, P.J.

14

Trial Court:

Superior Court of San Mateo County


Trial Judge:

Hon. Steven L. Dylina


Counsel for Plaintiff and Appellant:

Gene Williams, Makarem & Associates APLC

Ronald W. Makarem, Makarem & Associates APLC

Jean-Paul Le Clercq, Makarem & Associates APLC

Michael H. Kim, Michael H. Kim, P.C.

Melanie Massey, Michael H. Kim, P.C.


Counsel for Defendant and Respondent:

Michael S. Kun, Epstein Becker & Green, PC

Kevin D. Sullivan, Epstein Becker & Green, PC


*Serrano v. Aerotek*  A149187