Filed 7/10/18

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS MORALES et al., | D072378 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2013-00040938-CU-OE-CTL) |
| 22nd DISTRICT AGRICULTURAL ASSOCIATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Joel R. Wohlfeil, Judge.  Affirmed.

Law Offices of David J. Gallo and David J. Gallo for Plaintiffs and Appellants.

Gordon & Rees, James J. McMullen, Jr., Matthew G. Kleiner and Justin M.

Michitsch for Defendant and Respondent.

League of California Cities and California State Association of Counties, as

Amicus Curiae on behalf of Defendant and Respondent.

---

[*]     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.D.

# I.

## INTRODUCTION

In this appeal, we must determine whether a state entity whose employees are exempt from state law requiring the payment of overtime compensation is nevertheless required to pay overtime compensation to such employees when the state entity jointly employs the employees with a non-state employer. Although we concluded in a prior appeal in this case that the matter should be remanded to the trial court to permit the plaintiffs to amend their complaint to *attempt* to state a cause of action premised on such a theory (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 542–544 (*Morales*)), we now conclude that such a cause of action would not be legally viable. We further conclude that the law-of-the-case doctrine does not require that we reverse the trial court's order sustaining a demurrer to the plaintiffs' second amended complaint.[1]

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Proceedings in the case prior to our decision in* Morales[2]

Defendant 22nd District Agricultural Association of the State of California (the DAA) is a California agency that owns and manages the Del Mar Fairgrounds and the Del Mar Horsepark. Plaintiff Jose Luis Morales and a group of other seasonal employees

---

[1] In an unpublished portion of this opinion, we conclude that plaintiffs have not adequately alleged a separate theory of overtime compensation liability against the state entity. (See pt. III.D, *post*.)

[2] We base our description of the proceedings in the case prior to *Morales* on the "Factual and Procedural Background" section of that opinion. (See *Morales*, *supra*, 1 Cal.App.5th at pp. 513–514.)

of the DAA filed a putative class action alleging that the DAA failed to pay plaintiffs overtime compensation required by state law under Labor Code section 510[3] and federal law under the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) (FLSA).

The trial court sustained, without leave to amend, the DAA's demurrer to plaintiffs' section 510 cause of action. After the trial court conditionally certified the case as a collective action, the DAA asserted an affirmative defense to plaintiffs' FLSA claim. Specifically, the DAA alleged that the employees were exempt from the FLSA overtime compensation requirements pursuant to a statutory exemption (29 U.S.C. § 213(a)(3)) commonly referred to as the "amusement exemption."[4] The trial court held a jury trial on the DAA's affirmative defense to plaintiffs' FLSA claim. The jury rendered a verdict in favor of the DAA and the trial court entered a judgment in favor of the DAA. Plaintiffs timely appealed.

B. *Morales*

The primary issues on appeal in *Morales* related to plaintiffs' claim under the FLSA. (*Morales*, *supra*, 1 Cal.App.5th at p. 513.) The *Morales* court concluded that the trial court properly granted judgment for the DAA on the FLSA claim. (*Ibid.*) The present appeal presents no issues with respect to that claim.

---

[3] Unless otherwise specified, all subsequent statutory references are to the Labor Code.

[4] The *Morales* court explained, "Under this exemption, an employee of an amusement or recreational establishment is not entitled to overtime compensation [mandated by the FLSA] if certain criteria are met." (*Morales*, *supra*, 1 Cal.App.5th at p. 513.)

3

The *Morales* court also rejected plaintiffs' contention that the trial court erred in sustaining the DAA's demurrer to plaintiffs' section 510 claim. (*Morales*, *supra*, 1 Cal.App.5th at p. 542.) After reviewing relevant case law,[5] statutory law, and administrative regulations, we concluded, "when section 510 and [W]age [O]rder No. 10-2001 are viewed together, the inescapable conclusion is that public employees in the amusement and recreation industry are exempt from state overtime requirements." (*Morales*, *supra*, at p. 541.) However, the *Morales* court concluded that the trial court erred in denying plaintiffs leave to amend to attempt to state a claim for section 510, subdivision (a) overtime "under the joint employee doctrine." (*Morales*, at p. 543.)

In reaching this latter conclusion, the *Morales* court noted that plaintiffs contended that "the DAA is required to comply with section 510 when it loans out its employees to outside promoters to support 'interim events,' . . . and charges the outside promoters the labor costs of employing the employees, plus a markup." (*Morales*, *supra*, 1 Cal.App.5th at p. 542.) We further noted that "[plaintiffs] assert that they can amend the complaint to allege that when they work on interim events, the DAA is a joint employer with the outside promoters and must therefore comply with section 510." (*Id.* at pp. 542–543.) After observing that "where joint employment exists, all employers are individually

_____

5       The *Morales* court relied on *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729 (*Johnson*). In *Johnson*, the Court of Appeal concluded that "a public entity, was exempt from section 510." (*Morales*, *supra*, 1 Cal.App.5th at p. 538.) The *Morales* court noted that the *Johnson* court had relied in part on "the established rule that public entities are not subject to a general statute unless expressly included." (*Ibid.*) Section 510, subdivision (a) does not refer to public entities or public employees. (See pt. III.A.2, *post*.)

4

responsible for compliance with the FLSA," (*id.* at p. 543) and that "joint employment is also recognized under California law," (*ibid.*) we concluded that plaintiffs should be granted leave to amend their complaint, reasoning:

> "We conclude that [plaintiffs] should be permitted to amend their section 510 claim since they have shown how they can potentially amend their complaint to state a valid claim under the joint employee doctrine. Accordingly, we reverse that part of the order sustaining the demurrer without leave to amend and direct the trial court to grant [plaintiffs] leave to amend the complaint. In so doing, we express no view as to the ultimate merits of [plaintiffs'] section 510 claim." (*Id.* at pp. 543–544.)

We remanded the matter to the trial court with directions to grant plaintiffs leave to amend their complaint. (*Morales*, *supra*, 1 Cal.App.5th at pp. 543–544.)

C. *Plaintiffs' second amended complaint*

On remand, plaintiffs filed a second amended complaint as a putative class action for the recovery of unpaid overtime compensation. In their second amended complaint, plaintiffs alleged that they had worked as joint employees of the DAA and certain "Outside Promoters." Plaintiffs further alleged that the DAA had failed to pay plaintiffs overtime compensation required by section 510, subdivision (a). Specifically, plaintiffs alleged the following:

> "12. [DAA] employs numerous persons to whom [DAA] refers as '119- day Employees'.
>
> "13. [DAA]'s 119-day Employees perform tasks such as cleaning out stables, manually sorting trash for recycling, digging and filling trenches, parking lot security, ticket-taking, *etc.*

5

"14. [DAA] loans out, leases, and/or seconds, its 119-day Employees to unaffiliated, private 'promoters' (hereinafter 'Outside Promoters') to support events (hereinafter 'Interim Events') such as gun shows, bridal bazaars, private parties, weddings, Christmas tree sales, hot tub sales, home and garden shows, *etc.*

"15. [DAA] charges the Outside Promoters the labor costs of employing the 119-day Employees, plus a 'markup'.

"16. When [DAA]'s 119-day Employees are loaned out, leased, and/or seconded, to perform work in support of Outside Promoters' Interim Events, the 119-day Employees are subject to the control of both [DAA] and the Outside Promoter.

"17. When [DAA]'s 119-day Employees are loaned out, leased, and/or seconded, to perform work in support of Outside Promoters' Interim Events, [DAA] is a joint employer with the Outside Promoters, and must therefore comply with Labor Code section 510, subdivision (a).

"18. Separate and in addition to the foregoing, when the 119-day Employees are loaned out, leased, and/or seconded, to perform work in support of Outside Promoters' Interim Events, the 119-day Employees are not directly employed by the State or any political subdivision thereof, for purposes of Wage Order No. 10.

"19. Many of [DAA]'s 119-day Employees work overtime hours in support of Outside Promoters' Interim Events.

"20. [DAA] does not pay its 119-day Employees any overtime compensation.

"21. [DAA]'s above-described policies and practices are in contravention of law.

"22. Each Plaintiff herein has been employed as a 119-day Employee at some point in time subsequent to 25 March 2010.

"23. Each Plaintiff herein is informed and believes he or she (as applicable) has performed work in support of Outside Promoters' Interim Events, and worked overtime hours in connection with such work."

6

Based on these allegations, plaintiffs brought a single cause of action for recovery of overtime compensation, attorney fees, and costs pursuant to section 510, subdivision (a) and section 1194, subdivision (a)[6] on behalf of themselves and a putative class of "119 day employees."[7]

D. *The DAA's demurrer*

The DAA filed a demurrer to the second amended complaint. In its demurrer, the DAA argued that in *Morales*, this court concluded that it was exempt from paying overtime compensation as specified in section 510, subdivision (a). The DAA further argued that it was not liable to plaintiffs for overtime compensation under section 510, subdivision (a) by virtue of its alleged status as plaintiffs' joint employer. The DAA argued that *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 333–334 (*Noe*) "confirms that the joint employer doctrine does not extend California's overtime laws to a joint employer who is otherwise exempt from that law."[8]

E. *Plaintiffs' opposition*

Plaintiffs filed an opposition in which they argued that the second amended complaint stated a cause of action for overtime violations under section 1194, subdivision

[6]     Section 1194, subdivision (a) provides a cause of action to employees to recover legally mandated overtime and minimum wage compensation. (See III.B, *post*.)

[7]     The second amended complaint contained a series of class action allegations through which plaintiffs asserted their claim on behalf of a class of similar situated "119-day employees."

[8]     While the DAA's argument suggested that *Noe* involved an employer that was exempt from the relevant labor law, *Noe* did not involve an exempt employer. (See *Noe, supra*, 237 Cal.App.4th at pp. 331–334.) Thus, as discussed in part III.B, *post*, we view the *Noe* court's discussion of the joint employment doctrine and section 1194 as inapposite.

(a), which, as the *Noe* court recognized, " 'imposes a duty on *every* employer (*i.e.,* including all co-employers)," (boldface omitted) to ensure that that employees receive overtime compensation mandated by section 510, subdivision (a).  Plaintiffs further argued that "[t]he *Morales* decision precludes [the DAA]'s current argument, because *Morales* held that plaintiffs' then-proposed amendment would state a claim if joint employment were to be properly pleaded."  Finally, plaintiffs argued that "if [the trial court] were to conclude that *Noe* cannot be harmonized with *Morales*, [the trial court] would be required to follow *Morales* under the law-of-the case doctrine."

F.  *The trial court's ruling*

After further briefing and a hearing,[9] the trial court sustained the DAA's demurrer without leave to amend.  The trial court reasoned:

> "[The DAA] is exempt from the state overtime requirements of Labor Code section 510.  *Morales*[, *supra*, 1 Cal.App.5th at pp. 537–538] (citing *Johnson*[, *supra*, 174 Cal.App.4th 729]).  In an attempt to avoid this prohibition, paragraph 17 of the SAC alleges: ' . . . [DAA] is a joint employer with the Outside Promoters, and must therefore comply with Labor Code section 510, subdivision (a).'  However, there exists 'no authority for the proposition that a joint employer may be held liable for Labor Code violations committed by a cojoint employer based on principles of agency or joint and several liability.  Rather, whether an employer is liable under the Labor Code depends on the duties imposed under the particular statute at issue.'  *Noe*[, *supra*, 237 Cal.App.4th at pp. 333–334].  In short, the alleged joint employment of plaintiffs by the DAA and the private employers does not serve to transfer the liability of the private employers to the DAA.  Labor Code section 510 does not contain language from which such joint liability can be inferred.

9    The record does not contain a reporter's transcript from the hearing.

8

"Plaintiffs argue that the appellate decision in *Morales* issued after *Noe*, such that the *Morales* decision controls and constitutes 'law of the case.' This argument lacks merit. *Morales* does not hold that joint employers are jointly and severally liable for the wrongdoing of co-joint employers. Instead, the narrow issue that *Morales* decided was whether Plaintiffs could potentially amend their Complaint. *Morales*[, *supra*, at pp. 514, 542–543]. Although leave to amend was permitted, the appellate court 'express[ed] no view as to the ultimate merits of [plaintiffs'] section 510 claim.' *Id.* at 544." (Emphasis altered.)

The trial court thereafter entered a judgment in favor of the DAA.

## G. *The appeal*

Plaintiffs timely appeal from the judgment.[10]

### III.

### DISCUSSION

*The trial court properly sustained the DAA's demurrer to plaintiffs' second amended complaint without leave to amend*

Plaintiffs claim that the trial court erred in sustaining the DAA's demurrer to their second amended complaint without leave to amend. Specifically, plaintiffs contend that the trial court erred in concluding that the second amended complaint did not adequately state a claim against the DAA for overtime compensation pursuant to sections 510, subdivision (a) and 1194, subdivision (a).

---

[10] While this appeal was pending, we granted an application of the League of California Cities and California State Association of Counties (the League) to file an amicus brief on behalf of the DAA. We have considered the League's amicus brief, as well as the plaintiffs' answer to that brief, in determining the issues presented on appeal.

A.  *Governing law and standard of review*

1.  *The law governing demurrers and the standard of review*

In *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, the

court outlined the following well-established law governing the review of an order

sustaining a demurrer without leave to amend:

> "A demurrer tests the legal sufficiency of the complaint.  We review
> the complaint de novo to determine whether it alleges facts sufficient
> to state a cause of action.  For purposes of review, we accept as true
> all material facts alleged in the complaint, but not contentions,
> deductions or conclusions of fact or law.  We also consider matters
> that may be judicially noticed.  [Citation.]  When a demurrer is
> sustained without leave to amend, 'we decide whether there is a
> reasonable possibility that the defect can be cured by amendment:  if
> it can be, the trial court has abused its discretion and we reverse; if
> not, there has been no abuse of discretion and we affirm.'  [Citation.]
> Plaintiff has the burden to show a reasonable possibility the
> complaint can be amended to state a cause of action."  (*Id.* at pp.
> 1608–1609, fn. omitted.)

In considering a trial court's order sustaining a demurrer without leave to amend,

" 'we review the trial court's result for error, and not its legal reasoning.' "  (*Bains v.*

*Moores* (2009) 172 Cal.App.4th 445, 478.)  "On appeal from a judgment of dismissal

entered after a demurrer has been sustained without leave to amend . . . the appellate

court must affirm the judgment if it is correct on any theory." (*Hendy v. Losse* (1991) 54

Cal.3d 723, 742 (*Hendy*).)

2.  *Relevant substantive law*

Section 510, subdivision (a) provides:

> "Eight hours of labor constitutes a day's work.  Any work in excess
> of eight hours in one workday and any work in excess of 40 hours in
> any one workweek and the first eight hours worked on the seventh

10

day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."

Section 1194, subdivision (a) provides:

"Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

While section 1194, subdivision (a) does not expressly state "who is liable" for a cause of action based on that statute (*Martinez v. Combs* (2010) 49 Cal.4th 35, 49 (*Martinez*)), the *Martinez* court held that "only an *employer* can be liable" (*ibid.*, italics added) for a wage claim under section 1194, subdivision (a) since "no generally applicable rule of law imposes on anyone other than an employer a duty to pay wages." (*Martinez*, *supra*, at p. 49.)

Industrial Welfare Commission Wage Order 10-2001 (Wage Order No. 10)[11] provides that "[e]ight (8) hours of labor constitutes a day's work," and specifies that employment beyond eight hours is "permissible provided the employee is compensated for such overtime."[12] (Cal. Code Regs., tit. 8, § 11100 (3)(A)(1).) While Wage Order No. 10 generally applies to "all persons employed in the amusement and recreation

---

[11] The Industrial Welfare Commission "ha[s] constitutional and statutory authority to adopt wage orders prescribing, among other things, maximum hours of employment for employees in California." (*Morales*, *supra*, 1 Cal.App.5th at p. 539.)

[12] The order specifies various rates of compensation to be paid based on the amount of overtime worked. (Cal. Code Regs., tit. 8, § 11100 (3)(A)(1)(a), (b), (c).)

11

industry" (Cal. Code Regs., tit. 8, § 11100(1)), the order exempts from its scope certain

public employees pursuant to the following provision:

> "[T]he provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district."  (Cal. Code Regs., tit. 8, § 11100(1)(C).)[13]

B. *Plaintiffs may not hold the DAA liable for overtime compensation by virtue of the DAA's status as plaintiffs' joint employer*

Plaintiffs claim that the trial court erred in sustaining the DAA's demurrer to their

section 1194, subdivision (a) claim for overtime wages allegedly due under section 510,

subdivision (a) by virtue of the DAA's status as plaintiffs' joint employer[14] with various

"Outsider Promoters."[15]  Notwithstanding that the *Morales* court concluded that "public

employees in the amusement and recreation industry are exempt from state overtime

requirements," (*Morales*, *supra*, 1 Cal.App.5th at p. 541) plaintiffs contend that the DAA

is jointly liable with the Outside Promoters for all wages due to plaintiffs under section

510, subdivision (a) because the DAA acted as plaintiffs' joint employer.

Plaintiffs correctly note that the DAA does not dispute that they adequately

alleged that the DAA is their joint employer.  Thus, we assume for purposes of this

---

13     It is undisputed that plaintiffs are employed in the amusement and recreation industry and would be subject to Wage Order No. 10, but for the public employee exemption.  (See *Morales*, *supra*, 1 Cal.App.5th at p. 540.)

14     As we explained in *Morales*, " 'Joint employment occurs when two or more persons engage the services of an employee in an enterprise in which the employee is subject to the control of both.' "  (*Morales*, *supra*, 1 Cal.App.5th at p. 543.)

15     We consider plaintiffs' additional claim that they have adequately stated a cause of action against the DAA under the theory that they are not "directly employed," (Wage Order No. 10) by the DAA in part III.D, *post*.

decision that plaintiffs' second amended complaint adequately alleges that the DAA acted as their joint employer. Thus, the question we must determine is whether, under California law, the DAA may be held liable for overtime wages due under section 510, subdivision (a) when the DAA acted as plaintiffs' joint employer, even though this court concluded in *Morales* "public employees in the amusement and recreation industry are exempt from state overtime requirements." (*Morales*, *supra*, 1 Cal.App.5th at p. 541.)

In *Morales*, we concluded that the matter should be remanded to the trial court because the plaintiffs had "shown how they [could] *potentially* amend their complaint to state a valid claim under the joint employee doctrine." (*Morales, supra*, 1 Cal.App.5th at p. 543, italics added.) However, for the reasons stated below, we now conclude that section 510, subdivision (a) does *not* require the DAA to pay its employees overtime compensation, and that is true whether the DAA is acting as plaintiffs' *sole* employer or plaintiffs' *joint* employer. Thus, the trial court properly sustained the DAA's demurrer to the second amended complaint.[16]

To begin with, we are aware of no authority, and plaintiffs have cited none, in either this appeal or in *Morales*, that supports the counterintuitive proposition that a public employee who is *not* entitled to overtime compensation when employed *solely* by a public entity, *is* entitled to such overtime compensation *from the public entity* when the

---

[16]   We address plaintiffs' argument that the law-of-the-case doctrine requires that we reverse the trial court's order in part III.C, *post*.

employee is *jointly* employed by the public entity and a private entity.[17]  Further, there is nothing in the text of either section 510 or Wage Order No. 10 that would support such an anomalous result.  Section 510, subdivision (a) makes no reference to public entities.  As the *Johnson* court observed, in the context of wage and hour provisions, "the Legislature expressly refers to public entities when it intends them to be included."  (*Johnson*, *supra*, 174 Cal.App.4th at p. 737.)  Wage Order No. 10 in turn expressly "exempts 'any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district.' "  (*Morales*, *supra*, 1 Cal.App.5th at p. 540, quoting Cal. Code Regs., tit. 8, § 11100(1)(C).)  Thus, there is nothing in the text of either section 510, subdivision (a) or Wage Order No. 10 that suggests that the DAA may be liable for overtime obligations when it acts as the plaintiffs' *joint* employer.

Further, plaintiffs have offered no plausible reason why the DAA could nevertheless be liable for paying overtime compensation *pursuant to section 510, subdivision (a)*, when the DAA jointly employs the plaintiffs with Outside Promoters. The plaintiffs contend that the *Morales* court must have concluded that "[the DAA's] employees do not qualify as public employees performing exempt work when they are leased out to support private-sector businesses.' "[18]  (Italics & boldface omitted.)  This rationale might be plausible if *Morales* were based *solely* on the sovereign powers

---

[17]     Whether the employee would be entitled to overtime compensation from the *private entity* is not a question presented in this appeal.

[18]     Plaintiffs advanced this same argument in the prior appeal.  (See *Morales*, *supra*, 1 Cal.App.5th at p. 542 ["[Plaintiffs] assert that when they are performing work for these outside entities, they are not public employees performing exempt work"].)

14

cannon of statutory construction. Under that cannon, a statute that does not expressly refer to a public entity is deemed not to apply to the public entity if such application "would result in an infringement upon sovereign governmental powers." (*Morales*, *supra*, 1 Cal.App.5th at p. 538.) As applied here, *if* the *Morales* court had concluded that plaintiffs were exempt from overtime requirements *solely* because applying the statute would infringe upon the sovereign powers of the DAA when the plaintiffs performed *work on behalf of the DAA*, then a reasonable argument could be made that the employees are entitled to overtime compensation from the DAA when they are "leased out to support private-sector businesses." However, neither *Morales*, nor *Johnson* on which the *Morales* court relied, concluded that section 510, subdivision (a) did not apply to public employees *solely* because such application would violate public entities' sovereign powers.

On the contrary, as the *Morales* court recognized, the *Johnson* court concluded that the sovereign powers cannon of statutory interpretation provided an *additional* and *alternative* basis for concluding that section 510, subdivision (a) did not apply to public employees. (*Morales*, *supra*, 1 Cal.App.5th at p. 538 ["indicia of legislative intent led the *Johnson* court to conclude that a water district was exempt from section 510, but '*[i]n any event*, the [water] District [was] *also* exempt' under the sovereign powers canon of statutory interpretation" (italics added)].)[19]

---

[19] The *Johnson* court was clear that the sovereign powers cannon of interpretation was not the exclusive basis for the court's conclusion that section 510 does not apply to public entities:

15

The *Morales* court, in turn, based its interpretation of section 510 almost entirely on Wage Order No. 10, which broadly exempts state employees from overtime compensation *irrespective of the nature of the employees' work*. (See Cal. Code Regs., tit. 8, § 11100(1)(C) ["[T]he provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof . . . "].) The *Morales* court reasoned, "[W]hen it enacted section 510, the Legislature was aware that [Wage Order No. 10] exempted public employees in the amusement and recreation industry from overtime compensation."[20] (*Morales*, *supra*, 1 Cal.App.5th at p. 541.)

In sum, there is nothing in either *Morales* or *Johnson* indicating that public employees' exemption from section 510, subdivision (a) overtime compensation applies solely when the employees are performing work that furthers the sovereign purposes of the state. We therefore see no basis for concluding that the applicability of the public employees' exemption from section 510, subdivision (a) turns on the type of work they are performing. Stated differently, we see no basis for concluding, as plaintiffs contend, that public employees are exempt from the overtime compensation mandates of section 510, subdivision (a) if the employees are performing work that furthers the DAA's sovereign purposes, but that such employees become entitled to overtime compensation if

---

"As discussed above, the indicia of legislative intent lead to the conclusion that the District, as a public entity, is exempt from section[ ] 510 . . . . In any event, the District is *also* exempt under the 'sovereign powers' maxim." (*Johnson*, *supra*, 174 Cal.App.4th at p. 738, italics added.)

[20] As noted in footnote 5, *ante*, section 510, subdivision (a) does not refer to public entities or public employees.

16

they are performing work that furthers the interests of "Outside Promoters." On the contrary, as the *Morales* court concluded, without qualification, "[P]ublic employees in the amusement and recreation industry are exempt from state overtime requirements." (*Morales*, *supra*, 1 Cal.App.5th at p. 541.)

Finally, while both parties and the trial court extensively discussed *Noe, supra,* 237 Cal.App.4th 316, we view that decision as inapposite because *Noe* did not involve, as does this case, a group of employees' section 1194, subdivision (a) claim against an employer based on a joint employment theory *where the employees are exempt from the Labor Code provision at issue*. Thus, whatever may be said about the legal responsibilities of joint employers pursuant to principles of joint and several liability or section 1194, subdivision (a) generally,[21] those principles have no application in this case since plaintiffs are exempt from section 510, subdivision (a).

---

[21] The DAA and the trial court emphasize that the *Noe* court stated, "We are aware of no authority suggesting that, under California law, joint employers are generally treated 'as if they were each other's agents' or that joint employers are normally held jointly liable for Labor Code violation[s] committed by a coemployer." (*Noe*, *supra*, 237 Cal.App.4th at p. 332; *Serrano v. Aerotek, Inc.* (2018) 21 Cal.App.5th 773, 784 (*Serrano*) ["*Noe* made clear that whether an employer is liable for a coemployer's violations depends on the scope of the employer's own duty under the relevant statutes, not 'principles of agency or joint and several liability' "].)

However, plaintiffs properly note that the *Noe* court suggested that a joint employer may be liable *pursuant to section 1194* for a cojoint employers' wage violations. (See *Noe*, *supra*, 237 Cal.App.4th at p. 333 ["section 1194 permits an employee with multiple employers to seek recovery of unpaid wages from any of them"]; *id.* at p. 334 ["if plaintiffs prove defendants were their joint employers, those defendants may be held liable under section 1194 for any unpaid minimum wage and overtime compensation resulting from plaintiffs' misclassification"].)

The *Serrano* court disagreed with the *Noe* court's statement that certain provisions of the Labor Code impose liability on an employer for the acts of a joint employer "by

17

In sum, we conclude that the DAA may not be liable for overtime compensation mandated by section 510, subdivision (a) when the DAA acts as a joint employer with another entity. Accordingly, we reject plaintiffs' claim that they properly stated a section 1194, subdivision (a) claim for section 510, subdivision (a) overtime compensation against the DAA pursuant to a joint employment theory of liability.[22]

C. *The law-of-the-case doctrine does not mandate reversal*

Plaintiffs claim that the law-of-the-case doctrine requires that we reverse the trial court's order sustaining the DAA's demurrer. Specifically, plaintiffs contend that the *Morales* court held that, if plaintiffs could adequately allege that the DAA was their joint employer, they would state a valid claim against the DAA for section 510, subdivision (a) overtime compensation and that the law-of-the-case doctrine requires that we adhere to this conclusion in this appeal.[23]

---

virtue of employer status." (Compare *Noe*, *supra*, 237 Cal.App.4th at p. 334, fn.10 ["many sections of the Labor Code do impose employer liability 'by virtue of employer status,' " and stating "[b]ecause sections 512 and 226.7 impose a duty on every employer to provide meal periods, an employee with multiple employers who is denied a meal period may pursue a section 226.7 claim against any of his or her employers"] with *Serrano*, *supra*, 21 Cal.App.5th at p. 784 [disagreeing with "*Noe*'s statement that 'an employee with multiple employers who is denied a meal period may pursue a section 226.7 claim against any of his or her employers' "].)

[22]    While the trial court relied on *Noe* in sustaining the demurrer, we must affirm a judgment entered after an order sustaining a demurer if the order is correct on any theory. (*Hendy*, *supra*, 54 Cal.3d at p. 742.)

[23]    While, plaintiffs did not refer to the law-of-the-case doctrine as a separately captioned argument in their opening brief, we conclude that the argument was adequately raised on appeal. To begin with, plaintiffs clearly raised the argument in the trial court, and the trial court expressly discussed the doctrine in its order. Further, plaintiffs asserted in their opening brief that "the law-of-case doctrine is fully applicable . . . ." In addition, plaintiffs' opening brief contained a section entitled, "The court's holding in

1. *Governing law*

" ' "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." ' " (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.) " '[Q]uestions presented and decided by [an] appellate court upon appeal from a judgment on demurrer become the law of the case, and are not open to question on a subsequent appeal' unless the evidence ' "is substantially different in a material respect." ' " (*Bigbee v. Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57.)

In *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482 (*Morohoshi*), the Supreme Court outlined the "unjust decision" exception to the law-of-the case doctrine as follows:

> "The law of the case doctrine applies to [the Supreme Court] even though the previous appeal was before the Court of Appeal, and it applies even though this court may conclude the previous Court of Appeal opinion was erroneous. [Citation.] 'Indeed, it is only when the former rule is deemed erroneous that the doctrine of the law of the case becomes at all important.' [Citation.] The doctrine is, we have recognized, harsh. [Citation.] Accordingly, we have declined to adhere to it where its application would result in an unjust decision, e.g., where there has been a manifest misapplication of existing principles resulting in substantial injustice . . . . The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination." (*Id.* at p. 491–492.)

---

*Morales*." (Boldface & some capitalization omitted.) In that section, plaintiffs argued that *Morales* established that "[plaintiffs] then-proposed amendment would state a claim if joint employment were to be properly pleaded." Further, the DAA included a separately headed argument in its brief captioned, "Law of the case doctrine is not applicable." (Some capitalization omitted.) Finally, plaintiffs offered a separately captioned law-of-the-case argument in their reply brief. Under these circumstances, we conclude that plaintiffs adequately raised the contention that the law-of-the-case doctrine requires reversal of the trial court's order.

19

2.  *Application*

The trial court concluded that the law-of-the-case doctrine did not apply because the *Morales* court concluded only that the "[p]laintiffs could *potentially* amend their Complaint."  (Italics added.)  The trial court reasoned further, "Although leave to amend was permitted, the [*Morales*] court, 'express[ed] no view as to the ultimate merits of [plaintiffs'] section 510 claim.' "  The DAA echoes this reasoning on appeal, contending, "[T]he issue that *Morales* decided was whether Plaintiffs could *potentially* amend their complaint."  We agree with this reasoning.  The *Morales* court did not expressly hold that, if plaintiffs could adequately allege that the DAA was their joint employer, they would state a valid claim against the DAA for section 510, subdivision (a) overtime compensation.

The two key portions of the *Morales* opinion are as follows.  In a paragraph summarizing the plaintiffs' claim for overtime due under section 510, subdivision (a), the *Morales* court stated:

> "We agree that section 510 does not apply to the
> DAA.  Nevertheless, we conclude that the trial court erred
> in sustaining the demurrer without leave to amend because
> [plaintiffs] have shown how they can amend their complaint to
> allege a potentially valid claim for overtime compensation."
> (*Morales*, *supra*, 1 Cal.App.5th at p. 538.)

In addition, the final paragraph of a section of the opinion entitled "Leave to Amend," (*Morales*, *supra*, 1 Cal.App.5th at p. 543, italics omitted) states:

> "We conclude that [plaintiffs] should be permitted to amend their
> section 510 claim since they have shown how they can potentially
> amend their complaint to state a valid claim under the joint

20

employee doctrine. Accordingly, we reverse that part of the order sustaining the demurrer without leave to amend and direct the trial court to grant [plaintiffs] leave to amend the complaint. In so doing, we express no view as to the ultimate merits of [plaintiffs'] section 510 claim." (*Id.* at pp. 543–544.)

In light of such equivocal language, we conclude that the *Morales* court did not hold that plaintiffs yet-to-be pleaded joint employment theory adequately stated a cause of action against the DAA. Even if we were to agree with plaintiffs that the *Morales* court *did* hold that exempt public employees could sue their public employer for overtime compensation to the extent the public employer jointly employed such employees with a private employer, the law-of-the-case doctrine would not require that this court adhere to this erroneous conclusion. (*Morohoshi*, *supra*, 34 Cal.4th at pp. 491–492.)

We explained in part III.B, *ante*, that the DAA cannot be liable for section 510, subdivision (a) overtime compensation when the DAA is an employee's joint employer with another entity. Further, neither of the two cases that we cited in *Morales* in support of our decision to remand the matter to permit the plaintiffs to amend their complaint to attempt to state a claim pursuant to the joint employment doctrine—*Bonnette v. California Health & Welfare Agency* (9th Cir. 1983) 704 F.2d 1465 (*Bonnette*) and *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 955 (*Guerrero*)—supports application of the doctrine in this context. Specifically, neither *Bonnette* nor *Guerrero* applied the joint employment doctrine to a public employer to require that the employer comply with a law that, as in this case, *exempts* its employees from the relevant law. Rather, in both cases, courts concluded that the public entity could be liable as a joint employer (*Bonnette*, *supra*, at pp. 1469–1470; *Guerrero*, *supra*, at p. 955), where the

21

relevant public entity was *not* exempt from the relevant law. (See *Bonnette*, at p. 1472 [concluding that "the tenth amendment is not a bar to the application of the FLSA's minimum wage provisions"]; *Guerrero*, at p. 955 [interpreting wage order and stating "IWC did not intend to exempt public agencies or political subdivisions generally from [wage order's] provisions"].) Further, plaintiffs have not cited—in this case or in *Morales*—and our own research has not uncovered, *any* case in which a court has applied the joint employment doctrine in such an unorthodox manner. Under these circumstances, to reverse the trial court's ruling and permit the plaintiffs' action to proceed would constitute "a manifest misapplication of existing principles resulting in substantial injustice," (*Morohoshi*, *supra*, 34 Cal.4th at pp. 491–492 [outlining unjust decision exception to law-of-the-case doctrine]).

Accordingly, we conclude that the law-of-the-case doctrine does not require that we reverse the trial court's order sustaining the demurrer.

D. *Plaintiffs failed to adequately state a claim for overtime compensation based on the theory that the DAA is not their direct employer*

Plaintiffs also contend that they properly stated a claim for section 510, subdivision (a) overtime compensation against the DAA because they properly alleged that they were *not* "directly employed" by the DAA. (Wage Order No. 10.)[24] Plaintiffs argue that "when they are leased out to support private-sector businesses," they are not "directly employed," by the DAA under Wage Order No. 10.

---

[24] Unlike the joint employment doctrine discussed in part III.B, *ante*, this theory of liability was *not* addressed in *Morales*.

22

As discussed in part III.A.2, *ante*, the exemption at issue provides, "[T]he provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district." (Cal. Code Regs., tit. 8, § 11100(1)(C).) Plaintiffs have not provided any authority as to the meaning of the term "*directly* employed" in Wage Order No. 10 (italics added), and our own research has not uncovered any such authority. Nor have the plaintiffs offered any interpretation of that term in their briefing on appeal.

One reasonable interpretation of Wage Order No. 10 is that "employees directly employed by the State" refers to employees of the State of California, and that Wage Order No. 10 also exempts employees indirectly employed by the State, i.e., employees of the State's political subdivisions. Under this interpretation, the terms " 'employees directly employed by the State or any political subdivision thereof,' " means " 'employees of the state or political subdivisions of the state.' " (See *Guerrero, supra*, 213 Cal.App.4th at p. 953 [stating that wage order that provided exemption for "employees directly employed by the State or any political subdivision thereof," exempted "employees of the state or political subdivisions of the state"].)[25] If this is the correct interpretation of Wage Order No. 10, then plaintiffs claim fails as a matter of law because

_____

[25] Similarly, Labor Code section 220 uses the term "directly employed" in "distinguish[ing] between, on the one hand, employees of state agencies, departments, and other components of state government . . . and, on the other, persons employed by counties, incorporated cities, and other political subdivisions of the State . . . . (Compare § 220, subd. (a) [referring to 'employees directly employed by the State of California'] with § 220, subd. (b) [referring to 'employees directly employed by any county, incorporated city, or town or other municipal corporation'].)" (*McLean v. State of California* (2016) 1 Cal.5th 615, 629.)

even under plaintiffs' indirect employer theory, plaintiffs would still be employees of a state agency, the DAA.

However, we need not definitively interpret the meaning of the term "directly employed" (Wage Order No. 10) in order to affirm the judgment. Even assuming, strictly for purposes of argument, that plaintiffs are correct in suggesting that, under Wage Order No. 10, *indirect* employees of the State and its subdivisions are entitled to recover overtime compensation from the State, plaintiffs have not demonstrated that they have adequately alleged that they are *in*directly employed by the DAA.[26]

The second amended complaint affirmatively alleges that the DAA *is* the plaintiffs' employer, albeit at times, plaintiffs' *joint* employer. Specifically, the second amended complaint alleges:

> "12. [DAA] employs numerous persons to whom [DAA] refers as '119- day Employees.' "

> "17. When [DAA]'s 119-day Employees are loaned out, leased, and/or seconded, to perform work in support of Outside Promoters' Interim Events, [DAA] is a joint employer with the Outside Promoters."

> "22. Each Plaintiff herein has been employed as a 119-day Employee at some point in time subsequent to 25 March 2010."

Further, the second amended complaint alleges that "loaned out, leased, and/or seconded, to perform work in support of Outside Promoters' Interim Events, the 119-day Employees are subject to the *control of both [DAA]* and the Outside Promoter," (italics

---

26    Plaintiffs have not suggested in their briefing on appeal that they could allege additional facts supporting the allegation that they are not directly employed by the State such that a remand for further leave to amend would be warranted.

added) an allegation that appears inconsistent with plaintiffs' claim that the DAA was *not* their *direct* employer.[27]  Plaintiffs have failed to explain how such factual allegations sufficiently state a claim based on the theory that the DAA is *not* their direct employer. Moreover, plaintiffs point to no other allegations in their second amended complaint demonstrating that they are not directly employed by the DAA.

Under these circumstances, we conclude that the plaintiffs have failed to demonstrate how they have sufficiently stated a claim under section 1194, subdivision (a) for overtime compensation due under section 510, subdivision (a) based on the theory that the DAA was not the plaintiffs' direct employer.  (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 ["On appeal, a plaintiff bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law"].)

---

[27]     The second amended complaint alleges that when plaintiffs were "loaned out, leased, and/or seconded, to perform work in support of Outside Promoters' Interim Events, [they] are not *directly employed* by the State or any political subdivision thereof, for purposes of Wage Order No. 10."  (Italics added.)  This allegation, however, is a mere legal conclusion, which we disregard in reviewing the adequacy of plaintiffs' complaint. (See e.g., *Tracfone Wireless, Inc. v. County of Los Angeles* (2008) 163 Cal.App.4th 1359, 1368.)

IV.

DISPOSITION

The judgment is affirmed.  In the interests of justice, each party is to bear its own costs on appeal.

AARON, J.

WE CONCUR:

BENKE, Acting P. J.

IRION, J.